428 A.2d 583

**JACOB KLINE COOPERAGE, INC., Appellant,**

v.

**GEORGE W. KISTLER, INC.**

Superior Court of Pennsylvania.

Argued June 11, 1980.

Filed April 3, 1981.

Mark H. Scoblionko, Allentown, for appellant.

Donald Lipson, Allentown, for appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

HESTER, Judge:

This is an appeal from an order of the Court of Common Pleas of Lehigh County. The procedural history and facts relevant to the issues on appeal are as follows:

Appellant is in the business of cleaning and repainting steel drums for resale to the public. There had been a series of fires originating in the automatic paint barrel booth, which appellant used to spray paint the drums. The drums were rotated and spray painted by this apparatus, and the fumes and excess spray were drawn by a fan up through a stack above the booth leading to the outside. Sometime prior to 1976, the appellant had an automatic dry chemical fire extinguishing system installed in order to control fires in the automatic paint barrel booths. This unit, which was not installed by appellee, failed to extinguish the numerous fires which occurred in the apparatus.

Appellant contacted appellee regarding its fire problem in April of 1976. Don Waggoner, an employee of appellee, inspected the existing system and recommended that an additional extinguishing tank and a number of extra discharge nozzles be installed inside the paint barrel booth stack.

Waggoner was unable to determine why the existing system had malfunctioned, but decided to add additional powder with the expectation that the increased system would control the fires.

On July 25, 1977, at approximately 7:00 p. m., appellant's building and various fixtures and machinery were damaged by a fire. Appellant contended that the fire originated in the paint barrel booth or the stack above it, then spread to the roof without being extinguished by the automatic dry chemical fire extinguishing system. Due to the fact that the fire allegedly originated in the area supposedly protected by the appellee's system, appellant was of the opinion that

appellee should be responsible for the damages sustained in the fire.

Appellant's theories of liability were:

(1) Strict liability, in that, (a) the extinguishing system failed to discharge its powder at the time of the fire and thus malfunctioned; (b) the system was inadequately designed since the fire was not extinguished even if appellant could not prove a specific design defect; (c) the system was inadequately designed because the appellee had chosen to use a type of powder rated for B-C types of fires when, in fact, appellee should have utilized a powder capable of extinguishing A-B-C types of fires;

(2) Negligence, in that the appellee inadequately performed its obligations under a service agreement existing between the parties;

(3) Breach of an implied warranty, either of merchantability or of fitness for a particular purpose, in that the appellee sold a system which either did not function properly or did not serve the specific purpose intended, i. e., extinguishing fires that occurred in the paint barrel booth or stack;

(4) Negligence, in that Waggoner never satisfied himself as to the reason the existing system had not extinguished the fires that had been occurring and was negligent on an ongoing basis when he failed to recommend a change in the system after a fire occurred in late 1976 which the increased system did not extinguish.

On January 23, 1979, a jury returned a verdict in favor of the appellee. This timely appeal followed the denial of post trial motions.

█ Appellant first contends the verdict was against the weight of the evidence. Our Supreme Court has held that a new trial should be granted only where the verdict is so contrary to the evidence as to shock one's sense of justice. *Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 265 A.2d 516

(1970). Appellant is not entitled to a new trial where the evidence is conflicting and the jury could have decided either way. *Hilliard v. Anderson*, 440 Pa. 625, 271 A.2d 227 (1970).

■ Appellant argued that appellee designed and installed a fire extinguishing system, and that the system failed to extinguish a fire originating in the protected area. Appellant presented the testimony of two firemen, Dale Werkeiser, an Assistant Chief of the Allentown Fire Department, and Herbert Miller, the Fire Inspector in charge of determining the origin and cause of the fire. Both witnesses testified on direct examination that the fire originated in the area of the stack above the paint barrel booth. However, cross-examination brought out the fact that these men had not conducted extensive investigations, and merely concluded from their observations at the scene that the fire must have started in the paint spray booths. Appellee presented contradictory evidence through the testimony of George W. Kistler who stated that the fire began outside the paint spray booth and supported his position with photographs and evidence introduced by the appellant. There is, therefore, more than ample evidence to support the verdict, and our sense of justice is not shocked by the verdict.

■ Appellant next contends the trial court erred in permitting George W. Kistler, Jr. to testify as to the origin and cause of the subject fire, alleging that the testimony was based upon facts not in evidence, and invaded the ultimate province of the jury. We have held that the trial court should consider whether the proffered opinion is helpful or even if helpful, whether it would confuse, mislead, or prejudice the jury. *Lewis v. Mellor*, 259 Pa.Super. 509, 393 A.2d 941 (1978). Kistler's testimony was not confusing or misleading, nor was it prejudicial. Appellant had introduced the testimony of two witnesses as to the origin of the fire. Appellants further objected to the testimony because Kistler never visited the premises, nor was he given a hypothetical question based upon facts made of record. We agree with the trial court that an expert may base his opinion on the testimony adduced by one of the parties made known to him

either by his having heard it or by having it read to him, and which, for the purpose of his opinion, he assumes to be true. *Tobash v. Jones*, 419 Pa. 205, 213 A.2d 588 (1965); *Kelly v. Martino*, 375 Pa. 244, 99 A.2d 901 (1953). Kistler testified he was in court and had heard the testimony of various witnesses concerning the premises before, during, and after the fire. He then rendered an opinion describing the specific evidence upon which he based his opinion, which was primarily the photographs of the premises immediately after the fire which had been introduced by appellant. We therefore, find no abuse of discretion in permitting this opinion evidence.

Appellant next contends the trial court erred in charging the jury that "opinion evidence is the lowest grade of testimony that the law permits in a case", rather than charging "that opinion evidence is generally considered of inferior or low grade." *Kuchinic v. McCrory*, 439 Pa. 314, 266 A.2d 723 (1970); *Schneider v. Patterson*, 209 Pa.Super. 265, 227 A.2d 925 (1967).

In reviewing alleged errors in the charge, we look to the charge in its entirety, against the background of the evidence in each case, in order to determine whether an error was committed and whether any prejudice resulted. *Rosato v. Nationwide Insurance Company*, 263 Pa.Super. 340, 397 A.2d 1238 (1979); *McCay v. Philadelphia Electric Company*, 447 Pa. 490, 291 A.2d 759 (1972); *Albert v. Alter*, 252 Pa.Super. 203, 381 A.2d 459 (1977). Viewing the alleged error in light of the foregoing standards, we fail to see any prejudice as a result of the charge, particularly since both parties relied upon opinion evidence in support of their positions.

Appellant next argues the trial court erred in charging the jury on contributory negligence. Our review of the record indicates the trial court properly charged the jury that contributory negligence does not bar recovery under the theory of strict liability. Later, the trial court charged the jury on a theory of trespass based on the negligent performance of the service maintenance contract by the appellee.

The court instructed the jury on contributory negligence as follows:

"Now, in this regard, however, as I indicated before, there was no question of negligence, or for that matter, any question of contributory negligence as to strict liability or the merchantability, warranty theories; but under this theory, there is a question of contributory negligence."

This charge of contributory negligence as to the service contract only was warranted by the evidence. Defense counsel adduced evidence as to the condition of the paint room, and the manner and importance of cleaning procedures in order to protect against fires. There was testimony to the effect that if soiled cleaning rags, soaked in solvent, were permitted to accumulate in the area, they could ignite as a result of spontaneous combustion, causing a fire outside the area protected by the extinguishing system. There was also expert testimony that the fire did originate outside the spray booth area. Therefore, there was sufficient evidence from which the jury could conclude that the manner in which the paint room was kept was a substantial contributory cause of the fire, and the charge on contributory negligence was proper. In any event, we fail to see any prejudice as a result of this portion of the charge. The jury failed to render a verdict in appellant's favor based on the theory of strict liability.

Appellant further argues that the trial court erred in refusing to charge the jury on a general theory of negligence.

Appellant's position is that the trial court charged on a theory of negligence only with respect to alleged negligent performance of the service contract.

Our review of the record discloses that the trial court clearly covered these theories of negligence in points for charge numbers 15 and 16. This issue, therefore, merits no further discussion.

Appellant also contends the trial court erred in instructing the jury that it could not hold the defendant liable for

anything other than what it installed. Section 402–A of the Restatement of Torts Second entitled "Special Liability of Seller of Product for Physical Harm to User or Consumer" provides:

(1) One who sells any *product* in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a *product,* and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in preparation and sale *of his product,* and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller. (emphasis supplied).

■ The question then becomes what product the defendant actually sold to the plaintiff. The product sold here was the add-on system. We agree with the trial court that the fact appellee connected this add-on system to the existing system does not make it strictly liable for defects in the existing system, although appellee might be liable for the failure of the complete system on some other theory, such as negligence. The justification for the strict liability theory is succinctly outlined in the reporter's notes to Section 402–A, Comment C:

"[the seller . . . by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy

demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone; and the proper persons to afford it are those who market the products."

Accordingly, the purpose of Section 402–A would not be facilitated by imposing strict liability upon the appellee based upon the existing fire extinguishing system. We agree with the trial court that appellee is not an assembler of component parts, but rather its status is analogous to a repairman. In general, the courts in other states have refused to apply the concept of strict liability in tort to a repairman, or one in a similar position, but rather have forced the plaintiff to prove negligence. See, Hursh and Bailey, American Law of Products Liability, Second Edition, Sections 6:15, 6:17.

We, therefore, find no error in this portion of the court's charge nor is there any merit to the final argument of appellant as to alleged error in the charge.

Order affirmed.

CAVANAUGH, J., concurs in the result.