472 A.2d 668

**TEMPORARIES, INCORPORATED, Appellant, (At No. 126 Pgh. 1983)**

v.

**Bruce Edward KRANE, t/d/b/a Pittsburgh Temporaries and Charles Krane, Appellants. (At No. 955 Pgh. 1982)**

Superior Court of Pennsylvania.

Argued March 29, 1983.

Filed Feb. 10, 1984.

104

---

James C. Larrimer, Pittsburgh, for appellants (at No. 955) and appellees (at No. 126).

Jan C. Swensen, Pittsburgh, for appellant (at No. 126) and appellee (at No. 955).

Before CAVANAUGH, BROSKY and MONTGOMERY, JJ.

CAVANAUGH, Judge:

The basis of this case is a "franchise agreement" dated August 14, 1974, entered into between Charles Krane and Temporaries, Incorporated (referred in this opinion as T I). The agreement granted an exclusive franchise to Charles Krane to operate a temporary help business in designated

counties in Pennsylvania and Ohio. The agreement which referred to Temporaries, Incorporated as T I and to Charles Krane as "Licensee" stated *inter alia:*

11. RENEWAL. Provided Licensee is not in default hereunder, Licensee may extend the term of this Agreement for an additional period of five (5) years by giving to TI written notification of its desire to renew at least six (6) months prior to the termination date hereof. Further, provided Licensee is not in default hereunder, Licensee shall have the right to extend the term of this Agreement for additional five (5) year periods without limitation in number; provided, that Licensee shall give written notice to TI of his intention to extend the term at least six (6) months prior to the termination date of each five (5) year extension.

.    .    .    .    .

13. EFFECT OF TERMINATION. Upon termination of this Agreement, Licensee agrees to immediately cease to use, by advertising or otherwise, the tradename TEMPORARIES INCORPORATED, or any other trade name, mark or style of TI and not to engage in any business which is competitive with TI or the business previously done by Licensee for a period of one year within the territory of this franchise. *Licensee shall immediately return to TI without charge, all forms, advertising matter, manuals, procedures and records furnished by or belonging to TI.*

.    .    .    .    .

15. CONDITIONS OF TERMINATION. Upon the termination of this Agreement for any cause, the Licensee will not for a period of one year thereafter, *directly or indirectly,* enter the employment of, or render services to, any other person, partnership, association or corporation engaged in the same or substantially similar business covered by this Agreement in any area which can be reasonably termed competitive to the Licensor or other Licensees; and during such term of one year the Licensee will not within such territory engage in such business on

his own account, or become interested therein, directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, employee, trustee, or in any relation or capacity whatsoever. Without limiting the generality of the foregoing, the minimum area of a competitive nature hereinbefore referred to shall be that area within a 25 mile radius of the Licensee's place of business, or any place of business conducted by the Licensor or any other Licensee of the Licensor at the time of the termination of this Agreement.

Charles Krane's son, Bruce Krane, was employed as the manager of the Pittsburgh office operated under the franchise, and under an addendum to the franchise agreement T I relieved Charles Krane from the obligation of devoting his full time to the franchise as long as Bruce Krane was employed full time by the licensee. From August, 1974, until August, 1979, Bruce Krane was employed by the licensee as a full time manager. Charles Krane did not extend the term of the agreement in accordance with paragraph 11 thereof. On July 13th he notified T I by letter that he was terminating his agreement with T I and he stated: "I am discontinuing my temporary help business as of July 14, 1979." The Pittsburgh office of T I thereupon closed its doors on Friday, July 13, 1979 and on Monday, July 16, 1979, the same office opened as "Pittsburgh Temporaries, Inc." under the ownership of Bruce Krane. This new business came into existence based on an agreement between Charles Krane and his son, Bruce Krane, under which Charles sold to Bruce all the equipment, furniture and fixtures he used as a licensee of T I. Charles also transferred to Bruce the telephone in the office, job agreements and employee applications. All of this was done for a nominal consideration. Bruce solicited and retained the permanent office employees and had the same telephone number as his father used. As far as the public was concerned the same business continued under a slightly different name. Bruce Krane had copies of job applications and job orders which he obtained as an employee of the

office previously operated by his father. In May, 1979 Bruce entered into an office lease for the same premises as that which had been rented by his father.

The conduct of Charles and Bruce Krane triggered extensive and complicated legal proceedings. In July, 1979, T I commenced an action in equity against Bruce Krane t/a/d/b/a Pittsburgh Temporaries, Inc. and Charles Krane alleging tortious interference with the contractual relation between T I and Charles Krane. A preliminary injunction was entered against Charles Krane and Bruce Krane enjoining them from interfering with the operation of T I's business. On August 9, 1979, a decree was entered enjoining Charles Krane "from selling and transferring possession of business forms relating to temporary employees, advertising matter, manuals, procedures and records to Bruce Krane or anyone else, and Charles Krane and Bruce Krane are instead directed to arrange for the transfer of said items forthwith to plaintiff or its designee." In addition, the decree directed Charles Krane to notify employees and customers of T I that on August 15, 1979, the business conducted by him was to be conducted by T I. The decree also provided that: "defendant Charles Krane shall not engage in the temporary help business in the Pittsburgh, Pennsylvania area for a period of one (1) year from August 15, 1979. *Bruce Edward Krane is not enjoined from engaging in the temporary help business in the Pittsburgh, Pennsylvania area for this period as long as the provisions of this decree are otherwise complied with.*" (Emphasis added).

The franchise agreement between T I and Charles Krane provided that "any controversy or claim arising out of or relating to this agreement" shall be settled in accordance with the rules of the American Arbitration Association. Accordingly, T I filed an amended complaint in arbitration against Charles Krane on September 9, 1979, for breach of contract and an arbitration award was entered in favor of T I and against Charles Krane in the amount of $17,500.00. This award has been satisfied in full. On January 6, 1981,

with the consent of the parties the case was transferred to the law side since the remaining issues involved only claims compensable in monetary damages. A non-jury trial was held in the court below and a verdict was entered in favor of T I and against Bruce Krane t/d/b/a Pittsburgh Temporaries in the amount of $69,035.18 which included punitive damages in the amount of $25,000.00. An appeal was taken to this court by Bruce Krane and subsequent to the appeal the court below awarded delay damages in favor of T I and against Bruce Krane in the amount of $4,957.00. The exceptions of Bruce Krane to the order awarding delay damages were sustained by order of December 23, 1982 and all other exceptions were dismissed. Cross appeals have been filed by T I and Bruce Krane.

On appeal, Bruce Krane has raised several issues. Initially, we shall consider his claim that the action for compensatory damages was barred by res judicata and/or collateral estoppel. In order for the doctrine of res judicata to prevail the following four conditions must coalesce: (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action and (4) identity of the quality or capacity of the parties suing or being sued. *Safeguard Mutual Insurance Company v. Williams*, 463 Pa. 567, 345 A.2d 664 (1975). *See also, Duquesne Slag Products Co. v. Lench*, 490 Pa. 102, 415 A.2d 53 (1980); *Stewart v. Tomis Development Company*, 315 Pa.Super. 63, 461 A.2d 636 (1983). We agree with the court below that the judgment entered in the arbitration proceedings involving T I and Charles Krane did not bar the action against Bruce Krane trading and doing business as Pittsburgh Temporaries. Similarly, the injunction entered against Charles Krane was not a bar as it was against a different party, and further it expressly provided that "Bruce Edward Krane is not enjoined from engaging in the temporary help business in the Pittsburgh, Pennsylvania, area for this period as long as the provisions of this decree are otherwise complied with." The parties and the issues were not the same and it is clear that the doctrine of res

judicata does not apply. Res judicata "from long usage has come to encompass generally the effect of one judgment upon a subsequent trial or proceeding." *Township of McCandless v. McCarthy*, 7 Pa.Commw. 611, 616, 300 A.2d 815, 819 (1973). An award in arbitration against Charles Krane does not bar an action against Bruce Krane for tortious interference with a contractual relationship.

■ The doctrine of collateral estoppel is a broader concept than res judicata. *Thompson v. Karastan Rug Mills*, 228 Pa.Super. 260, 323 A.2d 341 (1974).[1] The Supreme Court stated in *Safeguard Mutual Insurance Company v. Williams*, 463 Pa. 567, 574, 575, 345 A.2d 664, 668 (1975):

With respect to collateral estoppel we have recently stated that a plea of collateral estoppel is valid if, 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *In Re Estate of Ellis*, 460 Pa. 281, 333 A.2d 728, 731 (1975).

*See also, Greene Landfill, Inc. v. Greene Township Zoning Hearing Board*, 46 Pa.Commw. 602, 407 A.2d 903 (1979). We agree with the court below that the action for damages based on tortious interference with contract was not barred by the prior proceedings in the instant case. The thrust of the injunction proceedings was directed at Charles Krane to prevent him from violating his obligations based on his contractual relationship with T I, and the arbitration action was also based on Charles Krane's con-

---

1. The court stated in *Thompson v. Karastan Rug Mills*, 228 Pa.Super. 260, 265, 323 A.2d 341, 344 (1974):

Briefly then, the only requirements to the doctrine of collateral estoppel are:

(1) that the issue or issues of fact determined in a prior action be the same as those appearing in a subsequent action, there being no necessity that the cause of actions be the same;

(2) that the party against whom the defense is invoked is identical to or in privity to the party in the first action.

tractual relationship with T I. The issues in the action against Bruce Krane were not the same. The question in the litigation forming the basis of this appeal is whether Bruce Krane interfered in the contractual relationship existing between Charles Krane and T I. Certainly, many of the facts in the arbitration proceedings were relevant in the action for tortious interference with contract, but the issues are different and there is no privity between Charles Krane and Bruce Krane vis a ̀vis the issue of whether Bruce Krane wrongfully interfered in the contract existing between his father, Charles Krane, and T I.

■ Appellant, Bruce Krane, contends that the arbitration proceedings determined the issue of compensatory damages by awarding T I damages in the amount of $17,-500.00 against Charles Krane. This contention is without merit. While the award is final as to damages suffered by T I by reason of Charles Krane's breach of contract, it does not go to the issue of T I's damages by reason of Bruce Krane's interfering with the contract between Charles Krane and T I. The Restatement (Second) of Torts § 774 A provides:

*(2) In an action for interference with a contract by inducing or causing a third person to break the contract with the other, the fact that the third person is liable for the breach does not affect the amount of damages awardable against the actor; but any damages in fact paid by the third person will reduce the damages actually recoverable on the judgment.* (Emphasis added)

■ The court below properly gave credit to Bruce Krane in the amount of $17,500.00 in determining compensatory damages payable to T I.

■ The next issue is whether the evidence was sufficient to sustain T I's claim for damages for tortious interference with contract. The Restatement (Second) of Contracts deals with interference in a contractual relationship and states in Section 766:

## § 766.  Intentional Interference with Performance of Contract by Third Person

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

The section was specifically considered with approval by our Supreme Court in *Adler, Barish, Daniels, etc. v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978).  The court below found that Bruce Krane improperly interfered with the contract between his father and T I.  The facts established that Bruce Krane and his father entered into an elaborate scheme to continue what had been a franchise of T I as a new entity owned by Bruce Krane.  The obvious intent was to deprive T I of its rights under the franchising agreement between Charles Krane and T I.  In our opinion, it is immaterial that Charles Krane was an integral part of the subterfuge carried on by his son.  However, Bruce Krane, set the stage by transferring the lease into his name prior to the termination of the franchise agreement.  Bruce further arranged to have the physical assets of the office transferred to him as well as the records.  The permanent employees of Charles Krane's office immediately became employees of Pittsburgh Temporaries, Incorporated after Charles breached the contract with T I.  Bruce Krane had access to all the records of the temporary personnel that his father's franchise provided to area employers.  Bruce Krane saw what he believed to be an opportunity of taking over a profitable and going concern which had been operated as a franchise, and terminating T I's rights as the owner of the franchise.  This is the type of commercial conduct that the action for tortious interference with a contract is designed to remedy.  There is no doubt that Bruce Krane's interference with his father's contract was intentional, and the recent case of *Yaindl v. Ingersoll-Rand Company*

*Standard Pump-Aldrich Division,* 281 Pa.Super. 560, 574, 422 A.2d 611, 618 (1980) referring to the Restatement (Second) of Torts § 767, sets forth the guidelines in determining the existence of improper interference with a contractual relationship as follows:

Whether an intentional interference with the performance of a contract is improper depends upon the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979).

*See also Adler, Barish, Daniels, etc. v. Epstein,* 482 Pa. at 433, 393 A.2d at 1184.

The court below properly found that Bruce Krane's conduct constituted improper interference with the contract existing between his father and T I.

■ Appellant also contends that there was insufficient evidence to sustain the award of compensatory damages, and we find this contention to be without merit. The elements of lost profit were established by the testimony of T I's president and mid-Atlantic regional manager. Expert testimony on lost earnings was provided by a certified public accountant with many years experience, who projected earnings on the basis of appropriate data furnished to him. The trier of fact determines the weight of the evidence provided by an expert witness, *West Mountain Poultry Company v. Gress,* 309 Pa.Super. 361, 455 A.2d 651 (1982).

Appellant, Bruce Krane, further contends that the court erroneously awarded punitive damages. Although the amended complaint filed by T I did not seek punitive damages, counsel for T I remarked in his opening statement on March 23, 1981, that it was seeking such damages. "An essential fact needed to support a claim for punitive damages is that the defendant's conduct must have been outrageous." *Smith v. Brown*, 283 Pa.Super. 116, 120, 423 A.2d 743, 745 (1980). Outrageous conduct has been defined as an act "done with a bad motive or with a reckless indifference to the interests of others." *Focht v. Rabada*, 217 Pa.Super. 35, 38, 268 A.2d 157, 159 (1970). As noted in *Smith v. Brown*, 283 Pa.Super. 116, 120, 423 A.2d 743, 745 (1980):

"Reckless indifference to the interests of others", or as it is sometimes referred to, "wanton misconduct", means that "the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Evans v. Philadelphia Transportation Company*, 418 Pa. 567, 574, 212 A.2d 440, 443 (1965).

■ In the instant case the court below found Bruce Krane's conduct to be outrageous. Appellant was aware that under the terms of the contract all records and accounts were to be returned to T I upon the termination of the franchise. He was fully cognizant that the business was financially successful, and immediately upon termination of the franchise by his father the appellant took over the books, records, and office equipment belonging to the franchise.[2] There was sufficient evidence to sustain the

---

2. Had we heard the case in the first instance we might not have imposed punitive damages, which must be proved by clear and convincing evidence. *Acosta v. Honda Motor Company*, 717 F.2d 828 (3d Cir.1983). Bruce Krane was advised by an attorney with respect to the agreement that he entered with his father, and this could have rendered his conduct less than outrageous. Nevertheless, we are bound by the findings of the trier of fact supported by the evidence. *See Yellow Run Coal Company v. Alma-Elly-YV Mines, Ltd.*, 285 Pa.Super. 84, 426 A.2d 1152 (1981).

finding of the court below that Bruce Krane's conduct was outrageous in a legal sense.

▆▆▆▆ In Appeal Number 126 Pittsburgh 1983, the appellant is T I which has appealed from the order of December 23, 1982, sustaining the exceptions of Bruce Krane to the award of delay damages. The court below entered an order awarding delay damages on August 30, 1982 under Pa.R.C.P. 238. An appeal had been taken to this court by Bruce Krane on August 28, 1982. Accordingly, the court below determined that it had no authority to enter the order awarding delay damages. We agree, as under Rule of Appellate Procedure 1701(a) the court below had no authority to proceed further in the case.[3] In any event, the court could not properly award delay damages as an action for wrongful interference with contract does not fall within the orbit of cases in which delay damages are authorized. Pa.R.C.P. 238 provides for the award for delay damages "in an action seeking monetary relief for bodily injury, death or property damage." While we have found no cases dealing with the application of Rule 238 to an action for tortious interference with contract, the rule itself applies only to certain actions and does not encompass every action. It is our opinion that delay damages do not apply to an action for tortious interference with contract.

Order affirmed.

**3.** Pennsylvania Rule of Appellate Procedure 1701(a) states:
   **Rule 1701. Effect of Appeal Generally**
      **(a) General rule.** Except as otherwise prescribed by these rules, after an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a quasijudicial order is sought, the lower court or other government unit may no longer proceed further in the matter.