488 A.2d 1117

**Rose Mary WAINAUSKIS, Appellee,**

**v.**

**HOWARD JOHNSON COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1983.

Filed Feb. 15, 1985.

Giles J. Gaca, Pittsburgh, for appellant (at 555) and appellee (at 565).

Jon L. Friedman, Pittsburgh, for appellant (at 565) and appellee (at 555).

Before BROSKY, McEWEN and BECK, JJ.

McEWEN, Judge:

Howard Johnson Company [hereinafter appellant] appeals from the $100,000 judgment entered against it in this malicious prosecution action following denial of its motions for judgment n.o.v. and new trial. We affirm.

Appellee, Rose Mary Wainauskis, filed a complaint against appellant, her former employer, setting forth four causes of action, specifically, claims for malicious abuse of process, wrongful discharge, slander and intentional infliction of emotional distress. When appellee had concluded the presentation of the liability portion of her case, the distinguished Judge S. Louis Farino entered a nonsuit as to her causes of action for wrongful discharge, slander and

intentional infliction of emotional distress.[1]  The jury returned a verdict in favor of appellee and against appellant in the amount of $100,000 on the count for malicious prosecution.

Appellant argues that it is entitled to judgment n.o.v. as the trial court erred when it refused to hold that, as a matter of law, there was probable cause for the institution of criminal proceedings against appellant.  Appellant relies upon the opinion of this Court in *DeSalle v. Penn Central Transportation Co.*, 263 Pa.Super. 485, 488, 398 A.2d 680, 681 (1979) for its position.

"In reviewing the denial of a motion for judgment n.o.v., we must view the evidence in the light most favorable to the verdict-winner.  Only evidence supporting the verdict may be considered with the rest being rejected.  All conflicts in the evidence are to be resolved in favor of the verdict-winner...."  *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa.Super. 475, 478, 448 A.2d 6, 8 (1982).  *Accord McDevitt v. Terminal Warehouse Company*, 304 Pa.Super. 438, 441, 450 A.2d 991, 993 (1982); *DeSalle v. Penn Central Transportation Co., supra* 263 Pa.Super. at 488, 398 A.2d at 681.  The evidence produced at trial reveals that appellee began working for appellant as a part-time bookkeeper in 1965.  A few months thereafter appellee was accepted into appellant's management trainee program and for the next four and one-half years was employed as an assistant manager of appellant's Scott Township store.  In 1970, appellee accepted employment with another employer and left Howard Johnson Company.  Appellee worked elsewhere until 1976, when she returned to Howard Johnson's Scott Township restaurant.  She was then transferred to the McKnight Road store as an assistant manager until late 1977, when she became assistant manager of the Boulevard of Allies restaurant.  On July 29, 1978, appellee returned to the Scott Township restaurant as assistant manager.  The

1.  Appellee has filed a cross-appeal seeking reversal of the non-suit on the count for intentional infliction of emotional distress only in the event that this Court reverses the order of the trial court dismissing appellant's motions for judgment n.o.v. and new trial.

store was then managed by a Mr. Andrews who was transferred to another location in August. Appellee was informed that a replacement manager would be assigned to the Scott Township facility but that until such time as the replacement manager arrived, she was "in charge" of the restaurant.

The area manager for appellant testified that at all times prior to the incident giving rise to the instant action, appellee was considered a "good employee" of Howard Johnson Company. Appellee's duties included authorizing employee time sheets, preparing work schedules, making daily cash receipt deposits, completing daily deposit slips, weekly sales and cash reports and forwarding copies of all such reports to appellant's headquarters and to the area manager. Sometime in December of 1978, appellant became aware that the daily cash receipts from the Scott Township restaurant were not being deposited in accordance with company regulations. Bookkeeping in all of appellant's stores was based upon twenty-four hour periods which began and ended at 3:00 p.m. each day. Receipts from each 24 hour period were to be deposited in the bank each day in the late afternoon or early evening, provided that no employee was to make such deposits alone after dark. During the months of November and December of 1978, appellee assumed the duties of the cook each afternoon after 2:00 p.m. and, therefore, was not able on most days to deposit the daily receipts before dark. She, therefore, deposited the day's receipts the next day, usually between the hours of 10:00 a.m. and 12:00 p.m., by placing the deposit bag in the night depository at the bank.

When Area Manager Thomas Jenkins was directed to ascertain why deposits from the Scott Township restaurant were not being made in a timely fashion, and he informed appellee on December 29, 1978, that bank records indicated her deposits were being made late, they both proceeded that day to the bank to ascertain why the deposits were being entered late. They learned there that those deposits which appellee made by depositing bags in the night depository

during banking hours were not opened and received by the bank until the following morning. As a result, the deposits were entered by the bank two days after the day on which they were received by the store. Appellee decided while at the bank to pick up the bank deposit bags previously placed in the night depository which the bank customarily held until an authorized employee retrieved them. Appellee then learned, and informed Mr. Jenkins, that no deposit bags were in the possession of the bank. Further inquiry revealed that two of the deposit bags used by the Scott Township store were missing and that the bank had no record of the deposits allegedly made on December 23, December 26, December 27 and December 28. The bank was unable, after further investigation, to discover any record of the missing deposits having been made. Mr. Jenkins informed headquarters of the discrepancy between appellee's records and the bank's records. Appellee continued to perform her usual duties at the Scott Township restaurant until January 4, 1979.

On that date, Earl Bleser, Manager of Security and Loss Prevention for Howard Johnson Company, after reviewing the sales and cash reports and deposit slips regularly forwarded from the Scott Township store by appellee, discussed the matter with Area Manager Jenkins for approximately 30 minutes before proceeding to interview appellee at the Scott Township store.

Mr. Jenkins testified at trial that he *thought* that he had informed Mr. Bleser that at least six people were in possession of the combination to the safe located in the Scott Township store but admitted that he had not told Mr. Bleser that appellee called him during the first week of December and reported finding a deposit bag containing cash hidden in the linen closet. Appellee testified that when she discovered the money secreted in the closet she called Mr. Jenkins, asked him what measures she should undertake and asked him to change the combination on the store safe. Although Mr. Jenkins assured appellee that he would have the combi-

nation to the safe changed, he failed to do so prior to January 4, 1979.

Appellee testified that she explained to Mr. Bleser her procedures for depositing daily receipts, namely, that she would complete her deposit slips and reports in the late afternoon or early evening, place the cash and deposit slips in the bank depository bag and place the bag in the safe. The following morning, after arriving at the store and attending to a few simple tasks, appellee would place the sealed deposit bag in her pocketbook, leave the restaurant and drive a few blocks to the bank where she would place the bag in the night depository slot rather than wait in line inside the bank to make her deposit.

Appellee further testified that she gave Mr. Bleser the names of seven other Howard Johnson employees who knew the combination to the restaurant safe, informed him of her discovery of the deposit bag secreted in the linen closet and told him of Mr. Jenkins' failure to pursue cautionary measures in response to the discovery of the hidden deposit bag. Appellee also stated that she informed Mr. Bleser that she had not worked on December 28, 1978, one of the dates for which the daily receipts were missing.

Approximately twenty-five minutes after the interview had commenced, Mr. Bleser informed appellee that in his opinion "[she] was in charge of the store and [she] was responsible for the theft" and asked appellee if she was willing to make restitution. When appellee refused and explained that she would not make restitution as she had not taken the money, Mr. Bleser told appellee that she was dismissed, that she was to balance the contents of the safe with Mr. Jenkins and, that she was to leave the premises. Lieutenant Kowalo of the Scott Township police department arrived shortly thereafter in response to Mr. Bleser's call and explained to Mr. Bleser that the police department would not undertake the prosecution of appellee. Lieutenant Kowalo suggested to Mr. Bleser that he contact the district justice and the district attorney's office if he wished to press charges. Mr. Bleser did so immediately by com-

pleting a criminal complaint charging appellee with the theft of the four missing deposits. He also subsequently testified against appellee at the preliminary hearing. When the first jury to try appellee on the criminal charges could not reach a verdict, a mistrial was declared. When appellant was retried, the second jury acquitted her. She thereafter instituted the present action against her former employer.

Mr. Bleser testified at trial that he never investigated appellee's prior employment history or her personal background and was even unaware of how long she had been employed by Howard Johnson's at the time that he decided to file criminal charges against her. Mr. Bleser testified, moreover, that he spoke only with Mr. Jenkins and appellee before he concluded that appellee was responsible for the theft of the monies.

In contradiction to appellee's testimony, Mr. Bleser testified that he was never informed of the incident involving the deposit bag found in the linen closet and that while Mr. Jenkins told him that appellee did not work on December 28, Bleser testified that appellee had told him that she had worked on that date.

Mr. Bleser testified at trial that he determined to prosecute appellee for theft based upon the fact that "she told me she took the money." When counsel for appellee inquired into Mr. Bleser's statement that he filed criminal charges against appellee as a result of her admission to him that she took the money, the following exchange took place:

Mr. Bleser reading from his deposition:

All right. Question: "Did you ask her to sign a statement?" Answer: "No, I didn't."

Question: "Why not?" Answer: "She never admitted taking the money."

Q. She never admitted taking the money? That is what you said in that deposition?

A. That is what it says.

Q. And in court under oath just a few minutes ago you said she admitted taking it.

     \*       \*       \*       \*       \*       \*

Q. Which is the truth, Mr. Bleser?

Q. She told me she placed the money in her pocketbook and she walked out of the restaurant with the money. She said she had no idea what happened to it after that.

Q. She told you her procedure. She didn't tell you what she did on specific days.

A. She told me that she took the money.

Q. Did she tell you her procedure—

A. She told me she took it.

Q. She didn't tell you what she did on the 26th, 27th and 28th?

A. Yes, she did.

Q. And the 23rd?

A. Yes.

Q. She told you her procedure?

A. No. She told me each day that she put her money in her pocketbook and went out the door with the money in her pocketbook.

Q. I've asked you this maybe three or four times within the last 20 minutes.

Now, Mr. Bleser, did she admit taking the money? And I'll have this read back if you want me to. But you told me—you told me and these members of the jury and the Court that she admitted taking the money.

A. That is correct. She did.

Q. And here you said she never admitted taking the money. Which is it?

Q. She admitted taking the money.

A. That's your answer?

A. That is right.

     \*       \*       \*       \*       \*       \*       .

Q. I asked you in here: did she admit taking the money? In fact, I didn't even ask that question like that. I asked you this question, if I'm not mistaken. You just

read it. And the question was: "Question: Did you ask her to sign a statement?" And the answer was, "No, I didn't." And then there was the question: "Why not?" Now, so I didn't give you a cue as to which way to go you then said "Answer: She never admitted taking the money."

Now, those are your words. You are able to understand those six words. You know what that means as a policeman.

A. Okay. I tried to answer that.

Q. But in court here today within the last 20 minutes, you said she did admit taking the money.

A. Right. And if you are referring to stealing the money in that context, like saying she stole the money, no, she didn't admit to that.

Q. She never admitted taking the money in that context?

A. In that context, no. She never admitted stealing any money.

Q. She never did?

A. No.

[N.T. 359–363]

Mr. Bleser, moreover, testified *in contradiction to appellee*, that she told him that she normally placed the daily receipts in the safe for only 45 minutes to an hour each day and then deposited them in the bank. He further testified that it was on the basis of appellee's alleged statement to him that "she made up the deposit slips, she put the money in her pocketbook, she went out of the restaurant to the bank with the deposits and didn't know what happened to [them]," that he determined that appellee was guilty of the theft of the missing deposits.

The initial argument of appellant is that the court erred when it refused to hold that, as a matter of law, there was probable cause for the institution of criminal proceedings against appellant.

"In an action for malicious prosecution, the plaintiff must prove that the defendant instituted proceedings without

probable cause, with malice, and that the proceedings were terminated in favor of the plaintiff. Absence of probable cause is an indispensible element of the action, and it is not conclusively established by an adjudication of innocence in the prior proceeding." *DeSalle v. Penn Central Transportation Co., supra*, 263 Pa.Superior Ct. at 490–491, 398 A.2d at 682–683 (citations and footnote omitted). *Accord Hugee v. Pennsylvania Railroad Co.*, 376 Pa. 286, 289, 101 A.2d 740, 742 (1954); *Weiss v. Equibank*, 313 Pa.Super. 446, 455, 460 A.2d 271, 276 (1983); *Shelton v. Evans*, 292 Pa.Super. 228, 232, 437 A.2d 18, 20 (1981); *Casa di Sardi, Inc. v. Alpha Motors, Inc.*, 227 Pa.Super. 415, 418, 323 A.2d 288, 290 (1974).

■ We agree with appellant that the presence or absence of probable cause is a question exclusively for the court where there are no material conflicts in the testimony. *DeSalle v. Penn Central Transportation Co., supra*, 263 Pa.Superior Ct. at 491, 398 A.2d at 683; Restatement (Second) Torts, § 673. However, where, as here, " 'material facts are in controversy, the question is a mixed one [of law and fact] and it becomes the duty of the jury, under proper instructions from the court as to what will justify a criminal prosecution, to say whether the plaintiff in the civil action has shown want of probable cause upon the part of the defendant.' " *Hubert v. Alta Life Insurance Co.*, 136 Pa.Super. 147, 150, 7 A.2d 98, 100 (1939) *quoting Heisey v. Vansant*, 126 Pa.Super. 373, 376, 190 A. 726, 728 (1937). *Accord Hugee v. Pennsylvania Railroad Co., supra* 376 Pa. at 289, 101 A.2d at 742; *Byers v. Ward*, 368 Pa. 416, 421, 84 A.2d 307, 310 (1951); *Simpson v. Montgomery Ward & Co.*, 354 Pa. 87, 97, 46 A.2d 674, 679 (1946); *Curley v. Automobile Finance Co.*, 343 Pa. 280, 289, 23 A.2d 48, 53 (1941); *DeSalle v. Penn Central Transportation Company, supra* 263 Pa.Super. at 491, 398 A.2d at 683.

■ "Probable cause is defined as '. . . a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense.' " *Hugee*

*v. Pennsylvania Railroad Co., supra* 376 Pa. at 290, 101 A.2d at 742 *quoting Miller v. Pennsylvania Railroad Co.,* 371 Pa. 308, 314, 89 A.2d 809, 811–812 (1952). *Accord Neczypor v. Jacobs,* 403 Pa. 303, 308, 169 A.2d 528, 530 (1961). The reasonable ground of suspicion, however, must not be based upon an inadequate and unreasonable investigation of the circumstances concerning the alleged criminal conduct. *See Hugee v. Pennsylvania Railroad Co., supra; Neczypor v. Jacobs, supra.*

■ Appellee testified that after a short period of discussion, Mr. Bleser accused her of the theft of the deposits, stating that "no one else could have done this" and that he "did not have to ask or talk to anybody else but [appellee]." Appellee also testified, in contradiction to Mr. Bleser, that she had informed him of her discovery of the deposit bag hidden in the linen closet and of the fact that she had not worked on December 28, 1978. Mr. Bleser admitted that he had not asked appellee to submit to a polygraph test, had not inquired into her employment history or personal background, and had not interviewed the other persons who were in possession of the combination to the safe. Moreover, Mr. Bleser admitted that his decision was based primarily on the fact that appellee allegedly told him she took the money. Material differences of fact were raised by the evidence received at trial. The trial court, therefore, properly submitted the question of want of probable cause to the jury with proper instructions on the issue. Our review of the evidence in the light most favorable to appellee, moreover, compels the conclusion that the jury was entitled to find that the proceedings against appellee were initiated with undue haste, on insufficient grounds and without probable cause. *See Hugee v. Pennsylvania Railroad Co., supra.*

■ As the Supreme Court observed in *Neczyor v. Jacobs, supra,* 403 Pa. at 309, 169 A.2d at 531, "when no immediate action is called for and time may be devoted to adequate preliminary investigation, the protection of the individual demands such an investigation because the hard-

ships, humiliation, suspense and expense to which an innocent person is subjected in an improper prosecution cannot be compensated for by a mere acquittal."

■■■ Moreover, we believe that the evidence was sufficient to permit the jury to find the existence of malice. Malice may be inferred from want of probable cause. *Hugee v. Pennsylvania Railroad Co., supra* 376 Pa. at 291, 101 A.2d at 743. Therefore, the evidence which we have found to be sufficient, when viewed in the light most favorable to appellee, to sustain a finding of want of probable cause, was sufficient, *ipso facto* to sustain the finding of malice.

■■ Appellant next asserts that it is entitled to judgment n.o.v. because appellee's first trial resulted in a hung jury and there was no evidence that any of the triers of fact had been imposed upon.

Appellant's argument disregards the fact that appellee was subsequently acquitted of all charges and that the jury in the malicious prosecution action, based upon the evidence submitted to it, could have reasonably found that appellant's employees withheld material evidence and failed to make a full and fair disclosure of all relevant facts to the prosecuting authorities.[2] *See and compare Miller v. Pennsylvania Railroad Co., supra* 371 Pa. at 316, 89 A.2d at 813; *DeSalle v. Penn Central Transportation Co., supra* 263 Pa.Super. at 493, 398 A.2d at 684; *Hubert v. Alta Life Insurance Co., supra* 136 Pa.Super. at 151, 7 A.2d at 101; Restatement (Second) Torts § 663(2), Comment (h). The trial court, therefore, properly refused appellant's motion for judgment n.o.v.

Appellant also argues that the trial court erred in refusing the following point for charge:

2. Mr. Bleser admitted, *inter alia,* that the Area Manager informed him that appellant did not work on December 28, 1978, but did not so inform the authorities allegedly due to the fact that appellant told him she had worked on December 28, 1978. Both juries in the criminal actions were told that appellee worked on December 28, 1978.

[T]he actions of the District Magistrate in holding the plaintiff to be tried in criminal court, the filing of an information against the Plaintiff by the District Attorney, the hung jury, and the rulings of the criminal court judges are affirmative evidence of probable cause. *De-Salle v. Penn Central Transportation Company* [263 Pa.Super. 485] 398 A.2d 680 (1979).

Judge Farino refused the point for charge on the grounds that appellant's "analysis that the determination of the other judicial officers was affirmative evidence of probable cause does not take into consideration that those determinations were made on the basis of information supplied solely by the [appellant]. As previously noted above, there was a factual dispute as to whether the [appellant] had given accurate and *full* information to the judicial officers." (Trial Court opinion at 6) (emphasis in original).

■ It is well-settled that an appellate court, when reviewing an allegation of error in the trial court's charge, must " 'look to the charge in its entirety, against the background of the evidence in each case, in order to determine whether an error was committed and whether any prejudice resulted.' " *Brogley v. Chambersburg Engineering Co.*, 306 Pa.Super. 316, 322, 452 A.2d 743, 746 (1982) *quoting Jacob Kline Cooperage, Inc. v. George W. Kistler, Inc.*, 286 Pa.Super. 84, 89, 428 A.2d 583, 586 (1981). The trial judge properly charged the jury on the issue of probable cause for the institution of the criminal proceedings against appellee.[3] It was not error to refuse, under the facts of the instant case, the point submitted by the appellant, since appellee had sought to establish throughout the trial that appellant had withheld or misrepresented material facts to the prosecuting authorities. The trial court, therefore, properly declined the submitted point for charge.

---

3. We note that no exceptions to the trial court's instructions to the jury were made by appellant at the conclusion of the charge. An exception to the refusal to charge on the submitted point had previously been requested and granted.

Appellant's final contention is that the court erred in refusing to grant its motion for a new trial as the verdict in favor of appellee was against the weight of the evidence. The scope of appellate review of the grant or denial of a new trial on the ground that a verdict is against the weight of the evidence is well-settled:

> [R]esolution of fact issues by a jury should not be disturbed unless such findings are clearly against the weight of the evidence. [W]here a trial judge has refused a motion for new trial on the ground that the evidence was sufficient, such an action should not be disturbed unless there is an abuse of discretion or a clear error of law.

*Baldino v. Castagna,* 505 Pa. 239, 245, 478 A.2d 807, 810 (1984) (citations omitted). *Accord Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 289, 265 A.2d 516, 518 (1970); *Burbage v. Boiler Engineering & Supply Co.,* 433 Pa. 319, 323, 249 A.2d 563, 566 (1969); *Dixon v. Andrew Tile & Manufacturing Corporation,* 238 Pa.Super. 275, 282, 357 A.2d 667, 670 (1976).

Our review of the record persuades us that the conflicting evidence presented by the parties provided a sufficient basis upon which the jury could reasonably and properly have found that appellant instituted criminal charges against appellee without probable cause and with malice. The trial court, therefore, properly refused to grant appellant's motion seeking a new trial on the grounds that the verdict was against the weight of the evidence.

■ We now consider the cross appeal of appellee and her assertion that the trial court erred in refusing to add Rule 238[4] delay damages to the amount awarded to appellee by the jury. Appellee sought compensation in the malicious prosecution action for monies expended for legal fees, past and future medical expenses and past and future lost

4. Pa.R.C.P. 238 provides, in relevant part:
"[I]n an action seeking monetary relief for bodily injury, death, or property damage or any combination thereof, the court ... shall (1) add to the amount of compensatory damages ... in the verdict of a jury ... damages for delay at ten (10) percent per annum, not compounded, which shall become part of the ... verdict...."

wages. Appellee additionally sought compensatory damages for mental anguish, humiliation and injury to her reputation.[5] The jury returned a general verdict in favor of appellee in the amount of $100,000. "Pa.R.C.P. 238 applies *only* to actions to recover damages for death, personal injury and/or property damage." *Colodonato v. Consolidated Rail Corporation*, 504 Pa. 80, 83, 470 A.2d 475, 477 (1983) (emphasis supplied). Appellee contends that an action for damages for malicious prosecution is, in fact, an action for "bodily injury". We are constrained to disagree.

■ This Court, in an opinion written by our distinguished colleague Judge James R. Cavanaugh, has held that Rule 238 delay damages could not be awarded in an action for tortious interference with a contract where the jury returned compensatory damages for lost earnings and profits. *See Temporaries, Inc. v. Krane*, 325 Pa.Super. 103, 472 A.2d 668 (1984). While we have similarly found no cases discussing the applicability of Rule 238 to an action for malicious prosecution, we believe that an action for malicious prosecution is not an action for "damages for bodily injury". The trial court, therefore, properly held that Rule 238 was inapplicable to the instant action. *See and compare Colodonato v. Consolidated Rail Corporation, supra; Erie Insurance Exchange v. McGee*, 327 Pa.Super. 56, 474 A.2d 1171 (1984); *Greenspan v. United Services Automobile Association*, 324 Pa.Super. 315, 471 A.2d 856 (1984); *Mattox v. City of Philadelphia*, 308 Pa.Super. 111, 454 A.2d 46 (1982); *Merling v. Commonwealth, Department of Transportation*, 79 Pa.Cmwlth. 121, 127, 128, 468 A.2d 894 (1983).

Judgment affirmed.

BROSKY, J., files a concurring opinion.

5. Compensatory damages in an action for malicious prosecution "may include all of the plaintiff's actual expenses in defending himself, compensation for loss of liberty or time, harm to reputation, physical discomfort, interruption of business, mental anguish, humiliation, and injury to feelings." *Shelton v. Evans*, 292 Pa.Super. 228, 233, 437 A.2d 18, 21 (1981).

BROSKY, Judge, concurring:

I agree with the result reached by the majority, but wish to comment further upon appellee's claim that she was entitled to delay damages under Pa.R.C.P. 238. Although I agree with the majority that Rule 238 does not apply to an action for malicious prosecution, I believe that conclusion requires some explanation. As noted by the majority, damages for malicious prosecution "may include compensation for mental anguish, humiliation, and injury to feelings." *Shelton v. Evans*, 292 Pa.Super. 228, 233, 437 A.2d 18, 21 (1981). Instantly, appellant sought damages for such injuries. Certainly a broad construction of the terms "bodily injury" could encompass these types of injuries. The question, however, is whether we should construe the term so broadly. For the reasons that follow, I conclude that we should not do so.

The primary purpose of Rule 238 is to encourage pre-trial settlement of civil actions for bodily injury, death or property damages in order to alleviate the judicial congestion and delay caused by these types of actions. *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981). I believe that the number of malicious prosecution actions is so small relative to the number of actions for bodily injury (of a less broadly defined type), death, or property damage that I do not believe they contribute significantly to judicial congestion and delay. Also, I believe the difficulty in computing the proper amount of compensation for the type of injuries involved instantly tends to make pre-trial settlement so difficult that it would make the encouragement of Rule 238 of little value. Therefore, I would decline to construe the term "bodily injury" to encompass those injuries for which recovery is sought in a malicious prosecution action and agree with the majority that the trial court properly held that Rule 238 was inapplicable.[1]

1. Cf. *Miller v. Carnation Co.*, 39 Colo.App. 1, 564 P.2d 127 (1977). In that case, the court construed the term "personal injuries" in the Colorado statute providing for delay damages, Col.Stat.Ann.1973

§ 13–21–101, as meaning those injuries which impair well-being or the mental or physical health of the victim.