505 A.2d 625

**Frank CIBRONE**

v.

**Charles STOVER and Stover & Company, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1985.

Filed Feb. 18, 1986.

Kevin Brode, Pittsburgh, for appellants.

Robert C. Little, Pittsburgh, for appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

DEL SOLE, Judge:

This case involves an action in trespass for damages suffered by the Appellee, arising out of a malicious prosecution and false arrest allegedly initiated by the Appellants. A non-jury verdict was rendered in favor of Appellee against Appellant and Appellant's counterclaim was denied. Appellant's exceptions to the non-jury verdict were dismissed and this appeal followed.

Appellee, Frank Cibrone, was manager of a bakery which was owned by his mother and formerly owned and operated for many years by his father prior to the father's death. Appellant, Charles Stover, is President of a bakery supply company which sold flour and supplies to the bakery for many years, including the time the bakery was operated by Appellee's father. Appellants allegedly believed Appellee was owner of the bakery because all of their dealings were with Appellee since the death of the father.

In September and October 1979, Appellee signed three checks payable to Stover & Co., Inc., two of which were drawn on the bakery bank account and one drawn on the personal bank account of Appellee, under the name "Cib's Pizza & Hoagies". Check # 1 was dated September 6, 1979 and was delivered to Appellants' sales representative on September 4, 1979. This check was not honored by the bank and was returned marked "Not Sufficient Funds" (NSF) on September 11, 1979, after twice being presented.

Following a telephone conversation with Appellants' representative, Appellee signed another check (# 3) to cover check # 1. Check # 3 was written on October 2 or 3 and dated October 5. This check was also returned NSF by the drawee bank on October 5 as it was presented for payment on October 4. Checks # 1 and 3 were drawn on the bakery account.

A third check, # 2, was drawn on Cib's Pizza & Hoagie account. It was dated September 11 and was delivered to Appellants' representative 2 or 3 days before September 11th. This check was to cover supplies delivered after the date of check # 1. Check # 2 was also returned NSF after being presented twice. Appellee testified that he paid $800 in cash of the $831.80 amount specified in check # 2. Appellant denied receipt of cash for this check and testified the cash paid was for additional supplies delivered under a C.O.D. arrangement.

The bakery filed for bankruptcy on October 5. Appellant subsequently asked Appellee if he would be paid and was advised the matter was in bankruptcy. This conversation

occurred in mid-October and as a result, the claims were filed in bankruptcy court including the debts owing on checks # 2 and 3.

Appellant consulted his attorneys and was reportedly advised that the passing of NSF checks could constitute a crime. He allegedly only knew check # 3 was post-dated but was again reportedly advised that post-dating made no difference and it was still possible a crime had been committed.

Appellant took the checks to his local District Magistrate who processed the complaint which included review and approval by the County District Attorney. The District Magistrate issued arrest warrants and Appellee was arrested on January 9, 1980.

A hearing was held January 16, 1980 and after hearing evidence that the complaints were based on post-dated checks, the District Attorney's Office withdrew the charges and all charges were dismissed by the Magistrate. The action, previously described, which gives rise to this appeal followed.

Appellant raises the following three issues:

1. Has the Appellee failed to prove want of probable cause and malice where (1) the Appellant had consulted with impartial counsel and obtained the approval of the District Attorney to the charges filed; and Appellee did in fact commit the offense charged?

2. Did the court err in barring the testimony of the representative from Equibank to show the condition of the bank accounts upon which Appellee was the sole signatory?

3. Did the court err in awarding damages in the amount of $7,500.00 for mental distress when Appellee presented no evidence of outrageous conduct by Appellant?

Initially, we note,

In an action for malicious prosecution, the plaintiff must prove that the defendant instituted proceedings without probable cause, with malice, and that the proceed-

ings were terminated in favor of the plaintiff. Absence of probable cause is an indispensible element of the action, and it is not conclusively established by an adjudication of innocence in the prior proceeding.

*Wainauskis v. Howard Johnson Co.*, 339 Pa.Super. 266, 276–277, 488 A.2d 1117, 1122 (1985) quoting *DeSalle v. Penn Central Transportation Co.*, 263 Pa.Super. 485, 490–491, 398 A.2d 680, 682–683 (1979).

"Probable cause is defined as '. . . a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense.' " *Wainauskis v. Howard Johnson Co., supra.* 339 Pa.Super. at 277, 488 A.2d at 1122 *quoting Hugee v. Pennsylvania Railroad Co.*, 376 Pa. 286, 290, 101 A.2d 740, 742 (1954).

Therefore, for Appellee Cibrone to have succeeded, he was required to prove that Appellant Stover was without reasonable grounds of suspicion, supported by circumstances sufficient to warrant an ordinary prudent man in the same situation, in believing that Cibrone was guilty of issuing or passing a bad check in violation of 18 Pa.C.S.A. § 4105.[1]

---

**1.** § 4105. Bad checks provides in part:

(a) Offense defined.—

(1) A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.

(2) A person commits an offense if he, knowing that it will not be honored by the drawee, issues or passes a check or similar sight order for the payment of money when the drawee is located within this Commonwealth. A violation of this paragraph shall occur without regard to whether the location of the issuance or passing of the check or similar sight order is within or outside of this Commonwealth. It shall be no defense to a violation of this section that some or all of the acts constituting the offense occurred outside of this Commonwealth.

(b) Presumption.—For the purposes of this section as well as in any prosecution for theft committed by means of a bad check, an issuer is presumed to know that the check or order (other than a post-dated check or order) would not be paid, if:

(1) the issuer had no account with the drawee at the time the check or order was issued; or

Our review of the record reveals that prior to going to the Magistrate's office to file the complaint, the Appellant consulted his attorney. The trial transcript states in part:

Mr. Little: If the Court please, Mr. Stover has testified that he talked to Mr. Thompson and Mr. Altman. I think it is already made of record. I will stipulate that he talked to Mr. Altman's office before he went to the magistrate's office.

The Court: Come to the bar, Mr. Altman. If you were to testify, what would you propose to add to the record?

Mr. Altman: That Mr. Stover consulted us, Your Honor, and sent us the checks. We researched the matter. It was our opinion that a postdated check is in fact a crime in Pennsylvania ... We advised Mr. Stover that it was a crime and it could be prosecuted.

Trial Transcript Vol. 2 at 32.

In addition, "(e)ach of the two complaints shows on its face that it was approved by the District Attorney's Office of Allegheny County. These approvals were obtained by the defendants at the direction of Justice of the Peace Sebulsky." Trial Court Opinion at 5.

While counsel are at odds as to whether or not the issuing of a post-dated check under the particular circumstances of this case constitutes a crime, resolution of this question is unnecessary for disposition of this matter. It is undisputed that advice of counsel was sought prior to initiating the complaint.

The advice of an attorney at law admitted to practice and practicing in the state in which the proceedings are brought whom the client has no reason to believe to be interested, is conclusive of the existence of probable cause for initiating criminal proceedings in reliance upon the advice if it is (a) sought in good faith, and (b) given after a full disclosure of the facts within the accuser's knowledge and information.

(2) payment was refused by the drawee for lack of funds, upon presentation within 30 days after issue, and the issuer failed to make good within ten days after receiving notice of that refusal.

256

*Stritmatter v. Nese,* 347 Pa. 9, 19–20, 31 A.2d 510, 515 (1943) quoting from *Restatement (First) of Torts* § 666 (1938). It is immaterial whether the advice given by the attorney is correct as long as the above stated conditions set forth in *Stritmatter* have been met. *See Simpson v. Montgomery Ward & Co.,* 354 Pa. 87, 104, 46 A.2d 674, 682 (1946).

As previously stated, the burden was upon Appellee to prove Appellant proceeded without probable cause and he has failed to do so.[2]

Judgment vacated. Jurisdiction relinquished.

505 A.2d 628

**In re T.L.G. and D.A.G.**

---

**2.** Since we have determined that Appellee has failed to prove want of probable cause on Appellants part in instituting criminal proceedings, it is unnecessary to consider the other issues raised by Appellant.