516 A.2d 848

Peter Paul Loeffler, Jr. and Shirley R. Loeffler, his wife, Appellants *v.* The Mountaintop Area Joint Sanitary Authority, Appellee.

The Mountaintop Area Joint Sanitary Authority, Appellant *v.* Peter Paul Loeffler, Jr., and Shirley R. Loeffler, his wife, Appellees.

Argued September 9, 1986, before Judges CRAIG and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*Brian C. Corcoran,* for appellant.

*Anthony J. Lumbis,* for appellees.

OPINION BY JUDGE CRAIG, October 24, 1986:

These cross appeals arise from the second of two actions filed by Peter Loeffler, Jr. and Shirley Loeffler, his wife, in the Court of Common Pleas of Luzerne County regarding physical damage to their property[1] caused, in March and April of 1978, by a private contractor, Charles F. Smith & Son, Inc., which the Mountaintop Area Joint Sanitary Authority had hired to install a sewer line in and around the townships of Wright and Rice.

In the Loefflers' first action, against the contractor, the trial court, by order dated September 15, 1981, concluded that the contractor had entered an area of the Loefflers' property without permission and permanently destroyed a portion of the property. The court awarded the Loefflers $15,000, the difference between the land's value before and after the trespass.

---

[1] In the Loefflers' action against the contractor, the trial court found that the contractor had constructed upon the Loefflers' property an access road measuring 30 to 35 feet wide and 475 feet long, and had, during the construction, "removed at least 200 black oak trees and 18 native laurel bushes and further caused other damage in and to the remainder of the plaintiffs' property."

However, the Loefflers were unsuccessful in their attempt to execute upon the judgment because the contractor, who was self-insured up to $300,000, had filed for bankruptcy under Chapter 11 in 1978.

In that regard, the trial record establishes that counsel for the Loefflers received a letter dated October 2, 1981 from a claim supervisor representing ESIS, Inc., which stated:

In response to your letter, we regret to advise that you appear to be mistaken as to insurance coverage for Charles F. Smith & Sons and you were previously advised by Mr. Shadle that ESIS, Inc., is not an insurer. Mr. Shadle spoke to you on January 30, 1979, and advised that we are an investigation and adjusting service for self-insured clients, or clients with large self-insured retention limits which is tantamount to being self-insured. Further, you were told that our client filed for bankruptcy under Chapter 11 on July 12, 1978. . . .

In fact, at the time this case was tried there was an outstanding Federal Order staying all legal proceedings against Charles F. Smith & Sons. . . . We suggest your best course of action may simply be to submit your claim to the bankruptcy court.

On October 30, 1981,[2] the Loefflers filed this second action against the Mountaintop Area Joint Sanitary Authority. On May 14, 1982, the Loefflers filed an amended complaint in trespass[3] based upon section

---

[2] Although the trial court, in Finding of Fact No. 9, stated that the Loefflers filed suit against the authority on October 30, 1980, the original complaint is stamped "Filed Prothonotary 1981 October 30." That discrepancy does not affect our result.

[3] The Loefflers' amended complaint also pleaded a count in assumpsit against the authority. However, because the trial court

4.03 of a service agreement between the authority and the municipalities it served, which required the authority to assure that the sewage facilities carried adequate liability insurance.

By order dated April 12, 1985, the court affirmed an arbitration award to the Loefflers of $15,000 against the authority. The court concluded:

> Here the Authority permitted the Contractor to be a self-insured and where insured to obtain liability insurance with an out-of-state Company not subject to regulation by the Pennsylvania Insurance Commission. Under the circumstances here existing, it was the duty of the Authority to require the Contractor to have sufficient liability insurance to protect plaintiffs against injury caused by the Contractor's trespass. The Authority failed to perform this duty and this failure has caused the loss to plaintiffs.

The court also held:

> The defendant's failure to secure the required insurance coverage was not known to or disclosed to plaintiffs until shortly after October 2, 1981. The statute of limitations should not begin to run until that date. . . .

By order dated July 15, 1985, the trial court dismissed the authority's exceptions to the April 12 order. The authority now appeals, first contending that the Loefflers filed this action after the two year statute of limitations had expired. They also contend that, despite the authority's obligation under the service agreement to require sufficient liability insurance, that obligation does not extend to private property owners.

The Loefflers cross appeal the trial court's denial of their request for delay damages under Pa. R.C.P. No. 238.

---

refused to grant relief on that theory, and the Loefflers have not appealed that conclusion, we do not address it here.

## Statute of Limitations

Succinctly stated, the trial judge's analysis with respect to the statute of limitations was that, even if the cause of action arose as early as the time of the physical injury to the property, in March and April of 1978, the statute nevertheless did not begin to run until October 2, 1981, when ESIS informed counsel for the Loefflers that the contractor had no insurance which would compensate the Loefflers for their property damage.

The trial court found as fact that October 2, 1981 was the earliest that the Loefflers could reasonably have discovered that the authority had failed to require the contractor to carry adequate insurance, and the trial judge held that the authority was estopped to urge any earlier date of awareness of the absence of insurance, relying upon Mr. Loeffler's testimony that the authority's engineer and solicitor had assured him, at a meeting of the authority, that the contractor was adequately insured for the property damage and that the Loefflers would be "made whole."

Apart from that theory, an equally valid analysis is that the cause of action, in the suit against the authority, did not arise, to trigger the running of the statute of limitations, until the Loefflers suffered an injury as a consequence of authority's failure to make proper provision for insurance, *see Bruffett v. Warner Communications, Inc.*, 534 F. Supp. 375, (E.D. Pa. 1982), *aff'd* 692 F.2d 910 (3rd Cir. 1982), and that injury—inability to collect upon the judgment against the contractor—did not arise until approximately September or October, 1981, after the Loefflers had obtained a judgment against the contractor and attempted unsuccessfully to execute upon it.

Under either theory, the Loefflers' original complaint, filed on October 30, 1981, and amended on May

4, 1982, initiated the action well within the statute of limitations.

## Applicability of Service Agreement

The authority next contends that section 4.03 of the service agreement, which required the authority to employ an insurance consultant to recommend insurance coverage for the sanitary authority was entered into by the three municipalities only for their own protection and for the protection of the authority. The authority contends that the plain language of section 4.03 does not refer to general liability insurance, and therefore no duty to provide insurance protection for private property owners may be inferred. That section provides:

> *Section 4.03. Insurance Consultant.* The Authority shall employ as an Insurance Consultant a person or firm qualified to survey risks and to recommend insurance coverage for sanitary authority facilities and services and organizations engaged in like operations and having a favorable reputation for skill and experience in such surveys and such recommendations. In addition to performing such other functions as may be appropriate, the Insurance Consultant shall annually, at the time required for the Engineer's report referred in Section 4.02 hereof, prepare and submit to the Authority and the Municipality a report commenting on the adequacy of insurance policies and amounts of insurance to be carried on Authority Facilities.

The trial court concluded that the language of section 4.03 obligated the authority to require contractors to maintain sufficient liability insurance to protect claims of private property damage.

Whether the trial court has correctly interpreted a writing, in ascertaining the legal duties which arise

from it, is a question of law which this court may review. *Cowen v. Krasas,* 438 Pa. 171, 264 A.2d 628 (1970). The language of section 4.03 neither expressly nor impliedly excludes general liability insurance. Because the authority has articulated no interpretation of the section which would support the exclusion of general liability insurance, we affirm the trial court's construction of the section, as describing the most reasonable, probable and natural conduct of the parties. *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 190 A.2d 298 (1963).

### Pa. R.C.P. No. 238 Delay Damages

Pa. R.C.P. No. 238(a) provides in pertinent part that the court shall award delay damages "in an action seeking monetary relief for bodily injury, death or property damage, or any combination thereof. . . ."

In denying the Loefflers' rule for delay damages, the trial court concluded that the Loefflers were not entitled to delay compensation as to their damages because "plaintiffs' amended complaint seeks damages for loss suffered by plaintiffs by reason of the defendant-Authority's failure to require the Contractor to carry adequate general liability insurance. . . ."

However, Pa. R.C.P. No. 238 expressly identifies its coverage in terms of the "relief" involved, not the underlying cause of action. Although the Loefflers proceeded against the authority upon the basis of the authority's failure to require an independent contractor to maintain adequate insurance, the damages which they sought, $15,000, measured by the amount of their property's loss in value, is the amount required to make them whole. Thus, the monetary relief which their action sought, and obtained, was definitely for—and measured by—"property damage."

The trial court, in support of its denial of delay damages, cited *Temporaries, Inc. v. Krane,* 325 Pa. Superior Ct. 103, 472 A.2d 668 (1984), and *Reliance Universal, Inc. of Ohio v. Ernest Renda Contracting Co., Inc.,* 308 Pa. Superior Ct. 98, 454 A.2d 39 (1982). However, those cases are distinguishable from the present situation. In *Krane,* the court reversed the trial court's award of delay damages where the plaintiffs brought suit for tortious interference with contract and recovered lost profits, lost earnings and punitive damages. In that case, the plaintiffs suffered no bodily injury, death or property damage. Similarly, in *Reliance Universal,* the court reversed the trial court's award of delay damages in an action in assumpsit, where the relief sought was payment for supplying construction materials and a monthly service charge, not for property damage.

Accordingly, we reverse the trial court and direct an award of delay damages consistent with Pa. R.C.P. No. 238.

ORDER

Now, October 24, 1986, the order of the Court of Common Pleas of Luzerne County dated July 15, 1985, No. 4100-C, discharging plaintiffs' rule for delay damages under Pa. R.C.P. No. 238, is reversed and remanded so that the trial court may calculate the amount of delay damages to which the appellants are entitled, unless the trial court determines that appellee has timely raised and preserved an issue of responsibility for delay cognizable under *Craig v. Magee Memorial Rehabilitation Center,* Pa. , 515 A.2d 1350 (Pa. Supreme Court No. 105 E.D. Appeal Dkt. 1985, filed October 8, 1986), in which event the trial court shall observe the procedures adopted in *Craig, supra.*

Jurisdiction relinquished.

## ORDER

Now, October 24, 1986, the order of the Court of Common Pleas of Luzerne County dated July 15, 1985, No. 4100-C, overruling the objections of the Mountaintop Area Joint Sanitary Authority and entering judgment in favor of Peter Paul Loeffler, Jr. and Shirley R. Loeffler, his wife, in the amount of $15,000, is affirmed.