DOWNINGTOWN AREA SCHOOL
DISTRICT, Appellant,

v.

INTERNATIONAL FIDELITY
INSURANCE COMPANY,

Downingtown Area School District,

v.

International Fidelity Insurance
Company, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 5, 2001.

Decided March 21, 2001.

Thomas L. Cluff, Jr., West Chester, for appellant.

No appearance entered on behalf of appellee.

Before COLINS, Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

This case concerns the Downingtown Area School District's (Downingtown) attempt to recover monies from the International Fidelity Insurance Company (IFIC) under a performance bond that IFIC issued to Kern Structural Enterprises (Kern) in connection with a contract between Downingtown and Kern. Kern had defaulted on the contract resulting in damages to Downingtown.

This is the second time this case comes before this court. Previously, we considered, and denied, IFIC's appeal from an amended order of the Court of Common Pleas of Chester County (trial court) denying IFIC's Motion for Partial Summary Judgment. *See Downingtown Area School District v. International Fidelity Insurance Company*, 671 A.2d 782 (Pa. Cmwlth.1996). The matter subsequently was tried in November 1998, and the trial court issued its verdict on March 18, 1999. Presently before us are Downingtown and IFIC's cross appeals from the trial court's June 30, 2000 order denying Downingtown's post-trial motion and modifying the verdict.

The underlying facts of the case are largely undisputed. On February 8, 1989, Downingtown entered into a structural steel contract (Contract) with Kern for the construction of the Shamona Creek Elementary School Project (Project). Under the Contract, Kern agreed to provide labor, materials, equipment and services necessary for the Project, and Kern was required to substantially complete its work by August 15, 1989.[1] (Trial ct. Findings of Fact, Nos. 3–4, 22; R.R. at 322a.) In the event that the work was not completed by this date, the Contract provided that Kern would be liable for liquidated damages for delay in addition to any other consequential losses that Downingtown might incur because of the delay. (Contract section 1.07, Modification of Article 8, Time, subparagraph 8.4.2; R.R. at 330a.)[2]

As contractor for the Project, Kern, pursuant to its obligation under the Contract and under the Public Works Contractors' Bond Law of 1967 (Bond Law),[3] furnished

---

1. The Project was scheduled for completion in June of 1990 so that it would be ready to accept students when school started in September of 1990. (Trial ct. Findings of Fact, No. 1.) For that reason, Kern was to complete its work on the structural steel by August 15, 1989. With this preliminary step done, other prime contractors could perform the work necessary to enclose the building before winter weather set in, thereby allowing construction on the Project to continue throughout the winter months and be completed by summer of 1990. (Trial ct. Findings of Fact, Nos. 4, 9.)

2. In full, this subparagraph provides:

 *In the event of the failure of any Contractor to complete the entire work within the calendar day period,* that Contractor shall be liable to the Owner in the sum listed in the Proposal Form for each calendar day that the work shall be and remain incomplete which said sums shall be treated as liquidated damages and not a penalty, for the loss to the Owner of the use of premises in a completed state of construction or repair, and inspection costs to the Owner on account of the delay; provided, however, *that the said liquidated damages provided for herein shall be in addition to other consequential losses or damages that the Owner*

*may incur by reason of such delay, such as, but not limited to, added costs of the Project and the cost of furnishing temporary services, if any.* Any such sums for which the Contractor is liable may be deducted by the Owner from any moneys due or to become due to the Contractor.

(R.R. at 330a) (emphasis added).

3. Act of December 20, 1967, P.L. 869, *as amended*, 8 P.S. §§ 191–202. Section 3 of the Bond Law provides in pertinent part:

 (a) Before any contract exceeding five thousand dollars ($5,000) for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor, such contractor shall furnish to the contracting body the following bonds, which shall become binding upon the awarding of said contract to such contractor:
 (1) *A performance bond* at one hundred percent of the contract amount, *conditioned upon the faithful performance of the contract in accordance with the plans, specifications and conditions of the contract.* Such bond shall be solely *for the protection of the contracting body which awarded the contract.*

Downingtown with a Performance Bond provided by its surety, IFIC. In its first paragraph, the Performance Bond bound Kern and IFIC to Downingtown for the Contract amount of $513,929.00. The Performance Bond also contained a statement incorporating by reference the Contract between Kern and Downingtown.[4] (R.R. at 331a.) Directly following this statement, the Performance Bond provided:

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said Contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by the Owner.

Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly

(1) Complete the Contract *in accordance with its terms and conditions,* or

(2) Obtain a bid or bids for completing the Contract *in accordance with its terms and conditions,* and ... arrange for a contract between [the lowest responsible] bidder and Owner, and make available as Work progresses ... sufficient funds to pay the cost of completion less the balance of the contract price; but not exceeding, *including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof.* The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by Owner to Contractor under the Contract and any amendments thereto, less the amount properly paid by Owner to Contractor.

(R.R. at 332a) (emphasis added).

On May 23, 1989, Kern stopped work on the Project and notified Downingtown by letter that Kern was terminating the Contract, creating an immediate delay in the progress of the work. (Trial ct. Findings of Fact, Nos. 10, 12; R.R. at 339a.) In response, Downingtown formally declared Kern in default and advised it that Downingtown would proceed against Kern's bonds and pursue other available legal remedies against Kern. (Trial ct. Findings of Fact, No. 11; R.R. at 336a.) Downingtown immediately put IFIC on notice of Kern's default and repeatedly requested IFIC to intervene and address the resulting delay. In addition, other prime contractors on the Project put Downingtown on notice that Kern's default would delay the Project. (Trial ct. Findings of Fact, No. 13–14.) In November 1991, Downingtown filed an action in the trial court against IFIC as a result of Kern's default. In its complaint, Downing-

---

(2) *A payment bond* at one hundred percent of the contract amount. Such bond shall be solely *for the protection of claimants supplying labor and materials to the prime contractor* to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract, and shall be *conditioned for the prompt payment of all such material furnished or labor supplied or performed in the prosecution of the work.* "Labor or materials" shall include public utility services and reasonable rentals of equipment, but only for periods when the equipment rented is actually used at the site.

8 P.S. §§ 193(a)(1) and (2) (emphases added).

4. The Performance Bond stated simply, "WHEREAS, Contractor [Kern] has by written agreement dated February 8, 1989, entered into a contract with Owner [Downingtown] ... which contract is by reference made a part hereof, and is hereinafter referred to as the Contract." (R.R. at 331a.)

town sought damages for the difference between the cost of the Contract with Kern and the eventual cost to complete the project with another contractor. In addition to these damages, Downingtown also sought delay damages, liquidated damages and attorney's fees.[5]

On February 28, 1994, IFIC filed a Motion for Partial Summary Judgment. While IFIC did not dispute its liability for the difference in contract price between Kern and the replacement contractor, it did dispute its liability for the additional damages claimed by Downingtown, asserting that these items were neither covered by the express language of the Performance Bond nor required by Bond Law.

The trial court denied IFIC's Motion for Partial Summary Judgment as well as a subsequent Motion for Reconsideration,[6] and an appeal to this court followed. We were again asked to consider whether Downingtown, as a matter of law, can recover delay damages, liquidated damages, and attorney's fees against IFIC under a

Performance Bond issued pursuant to section 3 of the Bond Law, 8 P.S. § 193(a)(1), where the Performance Bond does not provide specifically for such remedies, but does incorporate the terms and conditions of the Contract providing for those damages. After examining the language of the applicable statute and the wording of the Performance Bond itself, we concluded that the terms of the Performance Bond may be sufficiently broad to extend coverage to damages beyond the price differential between Kern's Contract and the cost of completion with a different contractor. Because doubt remained as to whether such damages were unrecoverable under the Performance Bond, we held that IFIC was not entitled to judgment as a matter of law. Accordingly, we affirmed the trial court's denial of IFIC's Motion for Partial Summary Judgment and remanded the case for proceedings in accordance with our opinion. *See Downingtown.*

Following remand, on March 18, 1999, the trial court found that IFIC was only

---

**5.** On July 17, 1989, Downingtown entered into a contract with F.S.S. Fisher Steel Corporation (Fisher) to complete a portion of Kern's Contract obligations. Fisher substantially completed the structural steel portion of the Contract on December 12, 1989. (Trial ct. Findings of Fact, No. 24.) The difference in price between the Kern Contract and the Fisher contract was $21,071.00. (Trial ct. Findings of Fact, Nos. 15, 23; R.R. at 39a, 323a.) Moreover, the other prime contractors on the Project alleged that Kern's default caused a Project delay, and several of these contractors filed claims against Downingtown for delay damages and other costs, which Downingtown has paid. (*See* Trial ct. Findings of Fact, Nos. 16–21, 26; R.R. at 482a–511a.)

Accordingly, in Count I of its complaint, Downingtown requested (a) $21,071.00, representing the increase in price between the Kern Contract and the Fisher contract; (b) an amount in excess of $315,976.28, representing the amount of delay claims made by other prime contractors on the Project; (c) liqui-

dated damages under the Contract; (d) attorney fees, interests and costs; and (e) all other just relief. In Count II of its complaint, Downingtown requested a declaratory judgment that IFIC is responsible to Downingtown under the Performance Bond for any and all delay damage claims asserted by and paid to other contractors on the Project or arising out of the Kern default, including liquidated damages. (R.R. at 15a–16a.)

**6.** The trial court agreed with IFIC that the only costs specified under the Performance Bond were for the completion of performance. However, while recognizing that the Performance Bond itself made no specific mention of delay damages, the trial court noted that the Contract, incorporated by reference into the Performance Bond, did contain provisions concerning responsibility for costs resulting from delay. The trial court then concluded that, because the law is not clear as to whether Downingtown may obtain delay damages from IFIC under these circumstances, IFIC was not entitled to summary judgment as a matter of law.

liable for completion costs that exceeded the Kern Contract price and issued its verdict awarding Downingtown $33,081.47. Relying solely on its own reading and interpretation of the Performance Bond, the trial court ruled that, as specified in the Performance Bond, IFIC was obligated to pay only "the costs of completion less the balance of the contract price." As to the language immediately following this phrase, i.e., "but not exceeding, including other costs and damages for which [**IFIC**] may be liable hereunder, the amount set forth in the first paragraph hereof," the trial court concluded that this merely set a cap on IFIC's obligation but did not require IFIC to pay for other costs and damages, such as delay damages, caused by Kern.[7]

However, the trial court noted that in this court's earlier decision in *Downingtown*, we construed the same language as indicating that IFIC *may* be liable for consequential damages, including delay damages, and the trial court conceded that this court's opinion posed a stumbling block to his contrary interpretation and ruling. (*See* Trial ct. op. at 10.) Bearing in mind this apparent contradiction, the trial court, despite doubting Downingtown's entitlement to any award of delay damages, went on to find that Kern's default caused a delay which, in turn, caused damages to Downingtown, and the trial court determined the amount of these delay damages.[8]

Subsequently, both Downingtown and IFIC filed motions for post-trial relief requesting the trial court to modify the verdict. Downingtown requested that the trial court find IFIC liable for delay damages resulting from Kern's default and direct judgment for Downingtown in the amount of $309,392.00. IFIC contended that the trial court incorrectly held that the Project was delayed due to Kern's default and, alternatively, failed to apportion the amount of delay caused by Kern. Upon consideration of the motions, the trial court issued its June 30, 2000 order, which provides:

AND NOW, June 30, 2000, upon consideration of Plaintiff's [Downingtown] post trial motions to amend the verdict in this matter, I HEREBY DENY said motion.

Upon consideration of Defendant's [IFIC] post trial motions to amend the verdict in this matter, I HEREBY MODIFY the verdict to provide that, in the event that a reviewing court finds Defendant [IFIC] liable for "delay damages," Defendant [IFIC] should be responsible for $191,121.37 in delay damages. This is roughly 59% of total delay damages, including the change orders and the arbitration claims, but excluding attorney's fees. This percentage corresponds to the proportion of the total delay (62 of 104 days) attributable to the

---

7. The trial court found it significant that the Performance Bond called for the payment of costs for which **IFIC**, not Kern, may be liable. Additionally, the trial court made special note of the fact that the Bond Law addresses only contract performance and says nothing about consequential damages or damages due to delay. (*See* Trial ct. op. at 9.)

8. The trial court concluded that the following costs were incurred in whole or in part due to Kern's default:

(a) Difference between the Kern Contract price and the Fisher contract price-$27,071.00;
(b) Change orders approved to compensate for the delay-$74,273.65;
(c) T.C. Wills AAA Award-$32,500.00 plus $1,427.31;
(d) MECO AAA Award-$11,020.00 plus $100.00 in arbitration expenses;
(e) LNL Settlement-$170,000.00;
(f) Attorney's fees associated with defending the delay claims-$10,788.95.
(Trial ct. Findings of Fact, No. 26.)

default by Kern Structural Steel Company.

(Attachment to Downingtown's brief.)

 The parties now have filed cross-appeals from this order. Downingtown appeals from the denial of its motion for post-trial relief, asserting that this court, in our decision in *Downingtown,* interpreted the Performance Bond to hold IFIC liable for *all* damages due to Kern's default on the Contract. IFIC appeals from the trial court's modification of its March 18, 1999 order, contending that the record establishes that Kern caused no delay to the Project. The appeals have been consolidated for hearing before this court.[9]

 First, we consider Downingtown's appeal, in which Downingtown argues that the trial court improperly interpreted the language of the Performance Bond to exclude payment of costs and damages by IFIC other than the costs of completion of the Contract. In support of this position, Downingtown contends that this court already has decided the primary legal issue in this case in its favor, specifically, that the award of delay damages, liquidated damages, attorney's fees, interest and costs against IFIC is proper under the Performance Bond here. According to Downingtown, the plain meaning of the Performance Bond, as previously interpreted by this court, obligates IFIC to pay delay damages suffered by Downingtown as a result of Kern's default. Referring to our holding in *Downingtown* that the "Performance Bond *may* be sufficiently broad to extend coverage to damages beyond the price differential between Kern's Contract and the cost of completion with a different contractor," Downingtown maintains that the trial court should have entered judgment for delay damages once it determined that (1) Kern caused the delay; (2) the Kern Contract obligated Kern to pay delay damages; and (3) IFIC bonded Kern.

Initially, we note our disagreement with Downingtown's premise. In *Downingtown,* we held that summary judgment in favor of IFIC was inappropriate because doubt existed as to whether delay damages were unrecoverable under the Performance Bond. However, we did not hold that IFIC was obligated to pay delay damages under the Performance Bond; thus, Downingtown still had the burden of proving at trial that the delay damages alleged were both applicable *and* recoverable.

After reviewing the Performance Bond at issue here, the trial court determined that "as a matter of plain English, the [Performance Bond] does not make [IFIC] liable for delay damages caused by [Kern]." (Trial ct. op. at 9.) Upon careful consideration of the language in the Performance Bond, we agree with both the trial court's result and its reasoning. Indeed, we adopt that reasoning with respect to the interpretation of IFIC's obligations as set forth in the Performance Bond. To that end, we quote the following from the trial court opinion:

> The underlying [C]ontract between Kern and Downingtown ... clearly makes Kern liable for "consequential losses and damages that [Downingtown] may incur by reason of such delay." However, the contract with IFIC is not nearly so clear....
>
> In the [Performance B]ond, [IFIC] has the obligation, in the event of a default

9. Whether a trial court has correctly interpreted a writing, in ascertaining the legal duties which arise from it, is a question of law which this court may review. *Loeffler v. Mountaintop Area Joint Sanitary Authority,* 101 Pa.Cmwlth. 514, 516 A.2d 848 (1986). Accordingly, our scope of review of the trial court opinion is limited to determining whether its interpretation of the Performance Bond constituted legal error. *Id.*

by [Kern], of either completing the [C]ontract itself, or obtaining bids for completion of the [C]ontract, either itself or jointly · with [Downingtown], at [Downingtown's] election.

If the latter option is chosen, [IFIC] then is responsible to "make available as work progresses ... sufficient funds to pay the *cost of completion* less the balance of the [C]ontract price." That sentence then goes on to *limit*[10] the amount payable as "cost[ ] of completion" as follows: "but not *exceeding, including other costs and damages* for which [IFIC] may be liable hereunder, the amount set forth in the first paragraph hereof.[11] The term "balance of the contract price" is then defined as the price of the underlying contract less any amounts properly paid to the defaulting contractor.

The way I read this particular series of statements, [IFIC's] underlying obligation is to pay the *cost of completion.* The clause beginning with "but not exceeding" simply places a cap on [IFIC's] obligation. Granted, it does include as part of that cap "other costs and damages for which [IFIC] may be liable. However, I still think that as a matter of plain English, the [Performance Bond] does not make [IFIC] liable for delay damages caused by [Kern]. I think it is significant that the [Performance B]ond

says costs for which [*IFIC*] may be liable, and not for which [*Kern*] may be liable. [IFIC's] obligation is to provide "sufficient funds to pay the cost of completion less the balance of the [C]ontract." I see no other way of interpreting the term "cost of completion" other than as the cost of obtaining a substitute contractor who will actually complete the job. This figure is apparently $21,070.00, the amount by which the Fisher Contract exceeded the Kern Contract.

The interpretation that I have adopted tends to bring the contract language into conformance with the statutory language set forth at 8 P.S. § 193(a)(1), which requires the posting of "[a] performance bond at 100% of the contract amount, conditioned upon the faithful performance of the contract in accordance with the plans, specifications and conditions of the contract." The [Bond Law] doesn't say anything about consequential damages or damages due to delay.[12]

(Trial ct. op. at 9–10) (emphasis in original). In other words, because the Performance Bond does not specifically obligate IFIC to cover claims that Downingtown may have against Kern under the Contract, IFIC's liability is capped at the cost of Contract completion.[13]

10. We agree that because the phrase "other costs and damages" is contained in that part of the Performance Bond that *controls* IFIC's liability, it would be unreasonable to construe this language as *extending* IFIC's obligation beyond the specific terms of the Performance Bond.

11. The amount set forth in the first paragraph of the Performance Bond, indeed, the only amount mentioned in the document, is $513,929.00, which represents the Contract cost agreed to by Kern and Downingtown.

12. The trial court goes on to question whether the reference to "other costs and damages" is

superfluous and has no meaning in the context of that paragraph of the Performance Bond, speculating that it may relate to damages created by the surety itself. (Trial ct. op. at 10.) This may be true. It may also be a reference to a surety's obligation to pay the difference between the original contractor's contract and a replacement contract where the surety was unable to obtain a subsequent bid that equaled the original contract price.

13. This opinion is not affected by the WHEREAS clause incorporating by reference the Contract into the Performance Bond. As we stated previously in *Downingtown*, this

Accordingly, we affirm the trial court's order.[14]

LEADBETTER, J., did not participate in the decision in this case.

## ORDER

AND NOW, this 21st day of March, 2001, the order of the Court of Common Pleas of Chester County, dated June 20, 2000, is hereby affirmed, and we deny the appeals filed by the Downingtown Area School District and the International Fidelity Insurance Company, respectively.

clause "only sets out the condition of IFIC's liability rather than the scope of that liability." *Id.* at 788. This is not to say that Downingtown may not avail itself of other sources in seeking reimbursement for the damages incurred as a result of Kern's default.

14. In doing so, we deny both IFIC's and Downingtown's appeals from that order. In its cross-appeal, IFIC makes an alternative argument that, in the event the trial court erred with regard to IFIC's obligations under the Performance Bond, then the trial court abused its discretion by modifying the verdict to recognize delay damages caused by Kern's default. IFIC maintains that the testimony of its engineering expert establishes that Kern caused no delay in the Project; rather, any delay damages were due to, among many things, the failure of other contractors to start necessary preliminary work, the wet weather conditions, and the failure of the Project to be ready for structural steel, all of which made it impossible to maintain the construction schedule but none of which was related to Kern's default. However, because we agree with the trial court's interpretation of the Performance Bond, there is no need for us to reach this alternative argument, and we dismiss IFIC's appeal as moot.