# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Devereux Foundation,                    :
                    Appellant           :
                                        :
            v.                          :
                                        :
Chester County Intermediate Unit        :  No. 698 C.D. 2014
No. 24                                  :  Argued: May 8, 2015


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI          FILED: May 28, 2015


        The Devereux Foundation (Foundation) appeals from an order of the Court of Common Pleas of Chester County (trial court), finding that pursuant to a series of contracts between the Foundation and Chester County Intermediate Unit No. 24 (Intermediate Unit), the Intermediate Unit's obligation to pay for special-education services rendered by the Foundation was conditioned upon the Intermediate Unit's receipt of payment from the students' residential school districts.  For the reasons that follow, we affirm in part and remand for further proceedings.

## I.

The parties have stipulated to the following facts.  The Foundation is a national organization which provides residential treatment services to children.  It operates four facilities in Chester County, which are located within the following school districts: West Chester, Great Valley, Tredyffrin/Easttown, and Downingtown (Host Districts).  Beginning in 1998, the Host Districts determined that they lacked the capacity to educate the exceptional students placed in residential treatment facilities within their districts, including those residing in Foundation facilities, for which they were required to provide educational services.[1]  As a result, the Host Districts delegated their responsibilities under Section 1372(4) of the Code, 24 P.S. § 13-1372(4), to the Intermediate Unit, which in turn contracted with the Foundation to provide for the children's educational needs.  The Host Districts also agreed that the Intermediate Unit could perform "identification of special needs children" and "administration of billing and reimbursement functions" on their behalves.  (Reproduced Record [R.R.] at 1401a.)

---

[1] Under the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101–27-2702, a school district must provide educational services to a student who receives services from a residential treatment facility located within the district, even though the student is not a legal resident of the district.  *See* Section 1306(a) of the Code, 24 P.S. § 13-1306(a).

The Code defines "children with exceptionalities" as "children of school age who have a disability or who are gifted and who, by reason thereof, need specially designed instruction."  Section 1371(1) of the Code, 24 P.S. § 13-1371(1).  Where the host school district lacks the ability to educate "exceptional" children not otherwise provided for, the district's intermediate unit must "provide, maintain, administer, supervise and operate such additional classes or schools as are necessary or…otherwise provide for the proper education and training for all exceptional children."  Section 1372(4) of the Code, 24 P.S. § 13-1372(4).

The Intermediate Unit and the Foundation entered into a series of Standard Education Agreements (Agreements), providing that the Intermediate Unit would pay a set, daily fee to the Foundation with regard to each child referred there, in exchange for the Foundation's providing educational services.[2]

In turn, under Section 1309(b) of the Code, the Host Districts were entitled to recover the costs the Foundation charged for the children's education from the districts of which the children were legal residents (Home Districts). 24 P.S. § 13-1309(b). While the daily fee with respect to regular education is fixed by law, organizations providing special education may collect a "special education charge in addition to the applicable tuition charge." Section 1309(a)(2) of the Code, 24 P.S. § 13-1309(a)(2). Further, because the Host Districts authorized the Intermediate Unit to provide reimbursement and billing functions on their behalves, the Intermediate Unit was entitled to seek reimbursement of these fees from Home Districts to apply against the costs it was invoiced by the Foundation.

---

[2] To qualify for special-education services, a child must be evaluated to determine if he has an intellectual disability, health impairment, or specific learning disability that requires special education. 22 Pa. Code § 14.123. Before an initial evaluation may be conducted, parental consent generally must be obtained on a permission to evaluate (PTE) form. 34 C.F.R. § 300.300(a)(1)(i)–(iii). Following administration of the assessments and other evaluation measures, an individualized education program (IEP) team determines whether a child has a qualifying disability. 34 C.F.R. § 300.306(a)(1). A copy of the evaluation report (ER) and supporting documentation must be provided to the child's parent. 34 C.F.R. § 300.306(a)(2). If a child is determined to have a disability, an IEP must be developed, and parental notice and consent must be provided via a Notice of Recommended Educational Placement (NOREP) before the IEP is implemented. *See* 34 C.F.R. § 300.300(b); 34 C.F.R. § 300.320(a). While IEPs were already in effect for some children before they were referred to the Foundation (Category I students), this appeal concerns the children who did not yet have IEPs and therefore did not yet qualify for special-education services (Category II students).

In this regard, a 2001 amendment to the Agreements provided:

> Re: Item 3 — Payment of Fees
>
> As established and agreed, Agency (Chester County Intermediate Unit) shall make payment to [the Foundation] **only after collecting such educational fees from the student's resident school district**. Remittances shall take place within seven (7) business days of the date Chester County Intermediate Unit receives funds from the student's resident school district.

(R.R. at 1474a.) (Emphasis added.)

Following the 2001 amendments, Home Districts periodically refused to pay the Intermediate Unit for the Foundation's special-education services. Specifically, the Philadelphia School District (PSD) refused to provide reimbursement at the special-education rate for Category II students who were placed into the Foundation's special-education program by Host Districts and for whom the necessary paperwork was not subsequently provided to it.[3] Although the Intermediate Unit remitted all monies collected from the Home Districts to the

---

[3] In a February 2008 letter, John J. Tommasini, the Director of the Bureau of Special Education for the Pennsylvania Department of Education, directed the Intermediate Unit to provide PSD the ERs, IEPs, and NOREPs for all Category II students for whom payment was disputed. He further directed PSD to reimburse the Intermediate Unit for the outstanding balances upon receipt of these documents. However, Director Tommasini cautioned the parties that "[t]he [PSD] is only responsible for reimbursement when a NOREP signed by the parent of the student occurred after the ER." (R.R. at 1616a.) Finally, Director Tommasini explained that the Intermediate Unit may invoice PSD for special-education services provided in accordance with an IEP only when the IEP is crafted on a case-by-case basis for students rather than generically as an "interim" IEP.

Foundation (less the administrative fees it was entitled to collect), the Intermediate Unit refused to pay the difference between the amounts remitted to it by the Home Districts and the amounts owing to the Foundation for services rendered (the shortfall). Despite continued efforts by the Foundation and the Intermediate Unit to secure additional payments, an outstanding balance of $1,881,411.80 remained unpaid with regard to services rendered between 2003–2010.[4]

## II.

In February 2009, the Foundation filed an equity action against the Intermediate Unit and the Host Districts (*Foundation I*), asserting promissory estoppel and unjust enrichment claims and seeking to collect the unpaid shortfall. Following a bench trial, the trial court determined that the Foundation's equitable claims were precluded because the parties' duties and obligations were governed by express contracts and entered judgment in favor of the Intermediate Unit and the Host Districts. The trial court further opined:

> Moreover, these contracts were **"pay when paid"** contracts…and [the Intermediate Unit] has not yet been paid…. Therefore, the time for payment to [the Foundation] had not yet ripened as of the date of trial, at least for amounts still unpaid as of the time of trial. [The Foundation] argues that it terminated the "pay when paid" provision and substituted therefore a provision that services would be paid for in a timely fashion after the services were rendered. The evidence supports the

---

[4] The Intermediate Unit's records identify the amounts owed to the Foundation as "uncollectible," meaning that they pertain to students for whom final IEPs or NOREPs were not received or with regard to whom the Home District disagrees with the student's designation as special needs.

conclusion that [the Foundation] sought such a change but not that [the Intermediate Unit] agreed to such change.

(R.R. at 1619a.) (Emphasis added.)

Subsequently, in October 2011, the Foundation instituted a second action, asserting that the Intermediate Unit breached the Agreements, as amended, when it: (1) failed to pay the Foundation in full for special-education services rendered; and (2) failed to obtain parental signatures on IEP, NOREP and/or other requisite forms, thereby resulting in Home Districts' refusal to pay special-education rates with respect to certain children.

Following dismissal of the Intermediate Unit's preliminary objections, this matter proceeded to a bench trial based solely upon the parties' stipulations and exhibits. The trial court entered judgment for the Intermediate Unit, reasoning that under the plain language of the amendment, the Intermediate Unit's obligation to pay the Foundation for services rendered was conditioned upon the Intermediate Unit's receipt of monies from the Home Districts.[5]

Specifically, the trial court held that Item 3, the amendment:

[U]nambiguously express[es] the parties' intention that [the Intermediate Unit] is obligated to pay [the

---

[5] Nonetheless, the trial court examined the voluminous exhibits presented by the parties and determined that extrinsic evidence did not counsel in favor of a different outcome.

6

Foundation] only those educational fees collected. [The Intermediate Unit] must remit "such educational fees" collected from students' resident school districts. Further, [the Intermediate Unit]'s obligation to remit those amounts arises "only after collecting" the fees from students' resident school districts. Viewing Item 3 within the context of the Agreements, there is nothing to indicate that the parties intended to obligate [the Intermediate Unit] to pay [the Foundation] amounts other than those collected from the students' resident school districts or that [the Intermediate Unit] should bear the risk of loss with respect to any amounts billed to Home Districts but not paid by them (or anyone else).

(7/23/14 Trial Court Opinion, at 4.)

Additionally, the trial court rejected the Foundation's argument that the Agreements should be interpreted as "pay-when-paid" clauses in construction contracts (as opposed to "pay-if-paid" clauses), noting that such clauses are industry jargon that are not applicable outside the construction-industry realm. Following the denial of the Foundation's post-trial motions, the Foundation filed the instant appeal.[6]

## III.

On appeal, the Foundation asserts that the trial court erred in interpreting the subject Agreements as including "pay-if-paid" rather than "paid-

---

[6] Whether a trial court has correctly interpreted a writing in ascertaining the legal duties arising from it is a question of law which this Court may review. *Downingtown Area School District v. International Fidelity Insurance Co.*, 769 A.2d 560, 565 n.9 (Pa. Cmwlth.), *appeal denied*, 786 A.2d 991 (Pa. 2001). We review the trial court's decision for legal error. *Id.*

when-paid" clauses. Pay-when-paid provisions are timing mechanisms that do not shift the risk of the principal's nonpayment from the contractor (Intermediate Unit) to the subcontractor (Foundation); when so much time has passed that further delay in payment would be unreasonable, the contractor must pay his subcontractor under a pay-when-paid contract. Pay-if-paid contracts, on the other hand, explicitly shift the risk of nonpayment to the subcontractor; in such a case, the contractor who recovers nothing from his principal owes nothing to his subcontractor. The Foundation contends that in *Foundation I*, the trial court already determined that the subject clause was a "pay-when-paid" clause, and that under Pennsylvania law, this term provides a timing mechanism regarding when payment is due but does not condition the Intermediate Unit's payment to the Foundation upon receipt of the Home Districts' outstanding balances.

## A.

As a preliminary matter, we are not bound by the trial court's characterization of the subject clause as a "pay-when-paid" clause in *Foundation I*.[7] That decision adjudicated the Foundation's equitable claims against the Intermediate Unit and the Host Districts, dismissing the action because an express contract governed, and the trial court's characterization of Item 3 as a "pay-when

---

[7] As the United States Court of Appeals for the Third Circuit has explained, "[i]n construction contract parlance," a "pay-if-paid" clause results in a subcontractor being paid by the general contractor *only if* the owner pays the general contractor for the subcontractor's work. *Sloan & Co. v. Liberty Mutual Insurance Co.*, 653 F.3d 175, 179 (3d Cir. 2011). Conversely, a "pay-when-paid" clause "does not establish a condition precedent, but merely creates a timing mechanism for the general contractor's payment to the subcontractor." *Id.* at 180.

8

paid" clause was not then before it, i.e., it was dicta.[8] More importantly, although the court in *Foundation I* may have applied the "pay-when-paid" label, in substance, it seemed to find that the clause was a "pay-if-paid" provision, rejecting the Foundation's claim that the clause provided for payment in a timely fashion after services were rendered, and instead explaining that the Intermediate Unit's duty to pay ripened only when the Intermediate Unit received payment.

**B.**

Next, the parties dispute whether the law surrounding "pay-if-paid" and "pay-when-paid" clauses, typically present in construction contracts, is applicable to the payment dispute here, with the Foundation contending that such principles are applicable outside of the construction-contract context while the Intermediate Unit asserts that the distinction does not apply outside of construction contracts.

In interpreting *all* contracts—construction and otherwise—"[t]he fundamental rule…is to ascertain and give effect to the intention of the parties." *Lower Frederick Township v. Clemmer*, 543 A.2d 502, 510 (Pa. 1988) (internal quotation omitted). Where a dispute concerns a written contract, the intent of the

---

[8] Similarly, with regard to the Intermediate Unit's *res judicata* and collateral estoppel arguments, in *Foundation I*, the parties did not litigate and the trial court did not decide whether the Intermediate Unit breached Item 3 of the amended Agreements. *See Henion v. Workers' Compensation Appeal Board (Firpo & Sons, Inc.),* 776 A.2d 362, 365–66 (Pa. Cmwlth. 2001) (explaining that *res judicata* applies only when, among other requirements, "the subject matter and the ultimate issues are the same in both the old and the new proceedings"); *id.* at 365 ("Collateral estoppel acts to foreclose litigation in a later action of issues of law or fact that were actually litigated and necessary to a previous final judgment.").

parties "is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982). If the language is clear, it is a question of law. To determine if a "written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence." *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965).

If the language is ambiguous, however, what the agreement means is determined by the surrounding facts and circumstances, and that requires a decision for the trier of fact. *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986). An ambiguity exists if the language is subject to two or more reasonable interpretations. *Drummond v. University of Pennsylvania*, 651 A.2d 572, 580 (Pa. Cmwlth. 1994), *appeal denied*, 661 A.2d 875 (Pa. 1995). Initially, the court must ascertain whether the intent of the parties, as manifested only by the language of the contract, is clear. *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 469 A.2d 563, 566 (Pa. 1983).

These rules are not suspended in the construction-contract context, and likewise, there exists no rule of law precluding parties outside the construction realm from contracting for desirable provisions, even if those provisions traditionally apply in the construction arena. "Pay-if-paid" or "pay-when-paid" attribution to a payment clause is not some independent rule that applies only in

10

the construction-contract context but is merely a label used to describe the ultimate effect of the payment provision within the context of that agreement.

## C.

The determinative issue in this case is whether Item 3 imposes a condition precedent which must occur before the Intermediate Unit's payment to the Foundation is due or whether it merely establishes a timing mechanism. If Item 3 is tantamount to a timing mechanism, "referred to merely to measure the passage of time," "if the event does not occur some alternative means will be found to measure the passage of time, and the non-occurrence of the event will not prevent the obligor's duty from becoming one of performance." *United Plate Glass Co. Division of Chromalloy American Corp. v. Metal Trims Industries, Inc.*, 525 A.2d 468, 470 (Pa. Cmwlth. 1987). In this case, the trial court found that the unambiguous language is a "pay if paid" provision.

In support of its position that the amendment merely creates a timing mechanism, the Foundation relies upon various federal court cases applying Pennsylvania law, contending that the trial court committed an error of law in finding that language creates a "pay if paid" provision. *Sloan & Co. v. Liberty Mutual Insurance Co.*, 653 F.3d 175 (3d Cir. 2011); *Glass Artistry Architectural Glass & Metal, LLC v. Western Surety Co.*, Civil Action No. 09-2244, 2010 WL 331701 (E.D. Pa. Jan. 27, 2010); *LBL Skysystems (USA), Inc. v. APG-America, Inc.*, No. Civ. A. 02-5379, 2005 WL 2140240 (E.D. Pa. Aug. 31, 2005); and

*Earthdata International of North Carolina, LLC v. STV Inc.*, 159 F. Supp. 2d 844 (E.D. Pa. 2001).[9]

In *Sloan & Co.*, the following provision was at issue: "Final payment shall be made within thirty (30) days after the last of the following to occur, the occurrence of all of which shall be conditions precedent to such final payment…" 653 F.3d at 179. The provision then listed seven conditions precedent, including a requirement that the land developer pay the prime contractor before the prime contractor was obligated to pay the subcontractor. *Id.* The Third Circuit determined that this clause created a "pay-if-paid" situation due to the manner in which it unequivocally conditioned payment. *Id.* at 181. The court further explained that "additional language [was not required] to underscore [the parties'] intent to create a pay-if-paid clause" when "expressly delineated conditions precedents" were enumerated. *Id.*[10]

---

[9] We do not find *Glass Artistry Architectural Glass & Metal, LLC* instructive, as the district court in that case denied the plaintiff's motion for summary judgment, determining that genuine issues of material fact existed regarding the terms of the subject contract. Civil Action No. 09-2244, 2010 WL 331701, at *6. As such, the court found it unnecessary to determine whether the term at issue constituted a "pay-if-paid" or a "pay-when-paid" clause. *Id.* at *7 n.4.

Also, *Earthdata International of North Carolina, LLC*, involved a provision stating, "The Subconsultant invoices approved for payment by the Client shall be paid to the Subconsultant *when* such payment is received by the Consultant." 159 F. Supp. 2d at 845 (emphasis added). There, the district court denied the contractor's and subcontractor's cross-motions for summary judgment, finding that the provision was legally ambiguous. *Id.* at 847.

[10] Ultimately, the Third Circuit determined that the subcontractor could pursue its claims for final payment due to another, "super-override" provision, but such a term is not at issue in this case. *Sloan & Co.*, 653 F.3d at 184.

Similarly, the District Court for the Eastern District of Pennsylvania determined that a "pay-if-paid" clause was at issue in *LBL Skysystems (USA), Inc.*, No. Civ. A. 02-5379, 2005 WL 2140240, at *32. Specifically, the subject language stated, "Disbursements are anticipated twice monthly. However, *disbursement will be processed as funds are received.*" *Id.* There, the district court reasoned that a subcontractor was not entitled to receive payment unless funds were first received by the funds administrator, and therefore, that its payments were so conditioned. *Id.* The district court further explained, "[a] pay-if-paid condition generally requires words such as 'condition,' 'if and only if,' or 'unless and until' that convey the parties' intention that a payment to a subcontractor is contingent on the contractor's receipt of those funds." *Id.*

In interpreting the amended Agreement in accordance with its ordinary meaning, we agree with the trial court that Item 3 conditions the Intermediate Unit's duty to pay the Foundation upon receipt of fees from the Home Districts. Significantly, Item 3 provides that the Intermediate Unit must make payment "only after" it has received such payments from the Home Districts. As described in Merriam-Webster's Collegiate Dictionary (11th ed. 2004), the word "only" means "with the restriction that," and therefore serves to condition the phrase preceding it upon occurrence of the condition following it. *Id.* at 867. Such a restriction is consistent with a condition precedent and the case law cited by the Foundation. *See LBL Skysystems (USA), Inc.*, No. Civ. A. 02-5379, 2005 WL 2140240, at *32 (explaining that "pay-if-paid" provisions generally require words such as "if and only if"). After all, in *Sloan & Co. v. Liberty Mutual Insurance Co.*, the Third Circuit interpreted a contract provision establishing conditions

13

precedent to create a "pay-if-paid" provision, and here, the restrictive phrase "*only after*" clearly and unambiguously establishes such a condition precedent.  653 F.3d 175 (3d Cir. 2011).

Moreover, the second sentence of Item 3, stating "Remittances shall take place within seven (7) business days of the date Chester County Intermediate Unit receives funds from the student's resident school district," is analogous to the language at issue in *LBL Skysystems (USA), Inc.*, which the district court found to independently create a "pay-if-paid" clause.  No. Civ. A. 02-5379, 2005 WL 2140240, at *32 ("However, *disbursement will be processed as funds are received*.").  After all, if the Home Districts fail to remit payment to the Intermediate Unit, the event which triggers the seven-day deadline fails to occur.

For these reasons, we also find unavailing the Foundation's argument that where the Intermediate Unit received partial payments from Home Districts, the Intermediate Unit was nonetheless obligated to remit to the Foundation the full amount invoiced.  Pursuant to Item 3, the Intermediate Unit's duty to pay *in full* is not triggered until it receives payment in full.  In this regard, Item 3 states that the Intermediate Unit "shall make payment to [the Foundation] only after collecting *such educational fees* from the student's resident school district."  (R.R. at 1474a (emphasis added.))  The word "such" refers to the fees collected from the Home Districts and obligates the Intermediate Unit to remit only this amount (less its administrative fees).[11]

---

[11] We reject the Foundation's argument that Item 3 should be interpreted in accordance with Restatement (Second) of Contracts §227(1) (1981), as adopted by this Court in *United Plate*
**(Footnote continued on next page…)**

14

**D.**

Further, the Foundation argues that the trial court erred in failing to rule upon its second cause of action—its claim that the Intermediate Unit breached the Agreement by failing to obtain parental signatures on the IEP, NOREP, and other requisite forms, thereby resulting in Home Districts' refusal to pay special-education rates. We agree.

_____

**(continued…)**

*Glass Co. Division of Chromalloy American Corp. v. Metal Trims Industries, Inc.*, 525 A.2d 468, 470 (Pa. Cmwlth. 1987). That section provides, in relevant part:

> § 227 Standards of Preference with Regard to Conditions
>
> (1) In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk.
>
> (2) Unless the contract is of a type under which only one party generally undertakes duties, when it is doubtful whether
>
>> (a) a duty is imposed on an obligee that an event occur, or
>> (b) the event is made a condition of the obligor's duty, or
>> (c) the event is made a condition of the obligor's duty and a
>
> duty is imposed on the obligee that the event occur, the first interpretation is preferred if the event is within the obligee's control.
>
> (3) In case of doubt, an interpretation under which an event is a condition of an obligor's duty is preferred over an interpretation under which the non-occurrence of the event is a ground for discharge of that duty after it has become a duty to perform.

Restatement (Second) of Contracts §227(1). While Section 227 may be persuasive in "resolving doubts" or in "case of doubt," we decline to apply its provisions to alter the parties' intent, as ascertained from the unambiguous, plain language of the contract provision.

Despite the fact that the Foundation's concise statement of errors complained of on appeal challenged the trial court's judgment with regard to its second cause of action, the trial court's order and opinion did not address this issue. *See* Pa. R.A.P. 1925(a)(1) ("Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.").

Because the absence of an opinion addressing this issue hinders meaningful appellate review, we remand to the trial court with instruction to address its judgment regarding the Foundation's second cause of action in a Rule 1925(a) opinion. *See Eiser v. Brown & Williamson Tobacco Corp.*, 938 A.2d 417, 429 (Pa. 2007) (remanding a matter to the Superior Court to address the eight issues preserved in the appellant's concise statement of errors complained of on appeal and explaining that if it requires a more comprehensive Rule 1925(a) opinion on those issues, it may further remand to the trial court which initially addressed only two of the preserved issues); *see also Commonwealth v. Castillo*, 888 A.2d 775, 778 (Pa. 2005) (noting that Rule 1925 seeks to aid appellate review by enabling a trial court to address in its opinion the issues preserved by the appellant). To the extent the Intermediate Unit contends that this claim is barred by the statute of frauds or that the Foundation has a statutory remedy available, these defenses should also be addressed by the trial court in the first instance.

Accordingly, we affirm the trial court's order with respect to the Foundation's first breach of contract claim, and we remand with respect to the Foundation's remaining claim, instructing the trial court to set forth the rationale for its holding in a Rule 1925(a) opinion.

_____
DAN PELLEGRINI, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Devereux Foundation,                    :
                        Appellant       :
                                        :
            v.                          :
                                        :
Chester County Intermediate Unit        :
No. 24                                  :  No. 698 C.D. 2014

# **O R D E R**

AND NOW, this 28<u>th</u> day of <u>May</u>, 2015, the order of the Court of Common Pleas of Chester County dated December 20, 2013, in the above-captioned matter, is affirmed with respect to Devereux Foundation's first cause of action. With respect to Devereux Foundation's second cause of action, this matter is remanded to the trial court with instructions to set forth its rationale in a supplemental Rule 1925(a) opinion and transmit the record to this Court within sixty (60) days of the date of this order.

Jurisdiction is retained.

_____
DAN PELLEGRINI, President Judge